Commonwealth *v.* Dale, Appellant.

Argued June 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Vincent J. Ziccardi,* Acting Defender, for appellant.

*James D. Crawford,* Assistant District Attorney, with him *Roger F. Cox,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, September 11, 1969:
Judgment of sentence affirmed.

———

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was found guilty of aggravated robbery and rape. Post-trial motions nunc pro tunc were filed and denied. This appeal followed.

The issue in this case is whether a new trial should be awarded because the prosecutor allowed a codefendant, Joseph Charles, who appeared for the Commonwealth, to testify falsely that no promises of special consideration had been made to him in exchange for his testimony.

Before considering the implications of this case, it should be noted that this issue was raised by Fred Williams, one of appellant's codefendants, with respect to this very case. Williams' conviction was affirmed per curiam without an opinion by this Court at 209 Pa. Superior Ct. 772, 231 A. 2d 187 (1967), and allocatur was refused. Relief was sought through federal habeas corpus. Williams argued that he was denied due process in that his counsel was not permitted to question Charles as to expectations of leniency arising as a result of Charles' testimony on behalf of the Commonwealth. Williams' petition was denied by the District Court whose order was affirmed by the U. S.

Court of Appeals. *United States ex rel. Williams v. Rundle,* 411 F. 2d 794 (3d Cir. 1969).

The relevant portion of Judge FULLAM'S opinion in the District Court is quoted here at length:

"A co-defendant, Joseph William Charles, entered a plea of guilty to his participation in the crimes alleged. The plea was entered about two months before the petitioner's trial, but Charles had not been sentenced at the time of the petitioner's trial. In the course of the entry of the guilty plea, Charles had been admonished at considerable length by the sentencing judge as to the desirability of his being willing to testify against his co-defendants. In that proceeding, the Commonwealth was represented by the same Assistant District Attorney who conducted the trial of the petitioner. The record of Charles' guilty-plea hearing includes the following:

" 'MR. SPRAGUE [the Assistant District Attorney]: . . . I have been advised that since this proceeding started, as Your Honor heard, no offer, no deal, or commitment of any sort was offered to this defendant, and the Commonwealth was ready to proceed to trial at this time.

" 'I have been advised that the defendant now desires to cooperate with the Commonwealth and to testify for the Commonwealth, at the same time reiterating that he will have no deal or commitment. And I would ask at this time that sentence be deferred.

" 'THE COURT: I would like to ask has he named or have you been able to ascertain the identities of the other young men in this?

" 'MR. SPRAGUE: May I say that other persons are under arrest and are awaiting trial. I have told counsel and the defendant if the court sees fit to defer sentence, I am going to have Mr. Alessandroni and Detective Winchester speak with the defendant and find

out the extent of his testimony and his availability to the Commonwealth.

. . .

" 'THE COURT: . . . *I am acceding to the District Attorney's request to defer sentence . . . you will have an opportunity to reduce some of this. No promise has been made to you by anyone up to now and no promise by this Court, but a suggestion to you that you ought to be man enough to name the other five. Will you do so?*

" 'THE DEFENDANT: Yes.

" 'THE COURT: *You promise the Court you are going to name those five men to this detective and do it today. Give them every bit of names, addresses, nicknames and everything else and what they did. It may save you many, many long years. Don't involve anybody if it isn't true but tell the truth on all of them. If you do, you will be given consideration.'*

"Thus, when Charles testified against the petitioner, the district attorney had specifically requested that his sentencing be deferred; the district attorney had indicated that only if sentence were deferred would he be interested in learning what Charles would be willing to testify to; and the sentencing judge had made 'a suggestion' that Charles should name the other men involved, and told the defendant that if he did 'it may save you many, many long years' and that if he were to 'tell the truth on all of them' he would be 'given consideration.'

"Nevertheless, a few weeks later, at the petitioners' trial, Charles was asked on cross-examination 'Q. Do you expect to derive some benefit from testifying in this case?' and his answer was 'No.'

"There would seem to be little doubt that the trial rulings, sustaining the Commonwealth's objections to these questions, were erroneous.

. . .

"I am therefore entirely convinced that the cross-examination of the witness Charles was unduly curtailed. But it does not necessarily follow that the error was of such magnitude as to render the trial constitutionally infirm. The judge who tried the petitioner did know that Charles had first denied his complicity, but had changed his plea to guilty when his case was called for trial; and that sentencing of Charles had been deferred. As an experienced trial judge, he undoubtedly realized the kinds of motivations and pressures that arise in such a situation. I am not persuaded that the curtailment of the cross-examination of Charles rendered the trial so unfair as to amount to a lack of due process; nor am I persuaded that the curtailment of this cross-examination was of sufficient magnitude to amount to a denial of the right of confrontation within the meaning of the doctrine of *Pointer v. Texas,* supra.

*"In an addendum to his brief, filed after the hearing in this case, counsel for the petitioner suggests that the record of petitioner's trial, together with the record of the guilty-plea hearing of Charles, makes out a case of the knowing use of perjured testimony. Cf. Napue v. Illinois, 360 U. S. 264 (1958); Nash v. Illinois, 389 U.S. 906(1967) (dissenting opinion denial of cert.). However, this issue has never been raised in any state court proceeding. I am not aware of any reason for excusing the petitioner from compliance with the requirement that he first exhaust all available remedies under state law."*

Thus Judge FULLAM decided, as a matter of federal constitutional law, that while failure to allow cross-examination constituted error, it did not amount to lack of due process or to a denial of confrontation.

He did not, of course, decide the state law issue of whether the error was harmless, an issue which pre-

sumably had been decided by our appellate courts. Nor did he consider whether the prosecutor had knowingly used perjured testimony.

After considering the issues more deeply, I feel that a new trial should be granted as the Commonwealth used materially misleading testimony.

The Commonwealth first contends that the witness did not give false testimony relating to an alleged promise of benefit, because while the court and district attorney had suggested a benefit, no actual promise had been made. Careful study of the statements made to the witness led Judge FULLAM to the conclusion that the statements by the judge to Charles did constitute a promise. I agree both with Judge FULLAM'S reasoning and conclusion in this regard.

A district attorney should not be permitted to use misleading testimony if he realizes, or should have realized, that the testimony in the context and manner in which it was given was misleading. In this case the district attorney should have known that Charles' denial of any promise of future benefit conveyed a mistaken impression to the trier of fact. I am not suggesting, however, nor is there any implication that the district attorney intentionally sought to mislead the court as it is quite possible that the above error was due to inadvertence.

The Commonwealth next argues that even if such promise had been made, the error was harmless since the case was tried before a judge alone who could be expected to recognize that the witness had some hope of benefit from his testimony, citing *Commonwealth ex rel. Williams v. Rundle,* supra.

Judge FULLAM never reached this question as he only considered the case before him in terms of deprivation of a federal constitutional right.

Nonetheless, I believe that as a matter of state law, our courts should not allow significant distinctions to

arise between cases tried before juries and those tried before judges alone. This point was well made in Judge MONTGOMERY'S opinion in *Commonwealth v. McNair*, 208 Pa. Superior Ct. 369, 371, 222 A. 2d 406 (1966), where an attorney had been denied the right to make a closing address in a nonjury case. He stated: "The finding of a judge in a nonjury criminal case is the equivalent of a jury verdict. In Commonwealth v. Richman, 132 Pa. Superior Ct. 529, 532, 1 A. 2d 578, 579 (1938), this Court said, 'A defendant surrenders none of his substantive rights when he is tried by a judge without a jury under the Act of 1935, and the trial judge is required to give consideration to, and is bound by, the same legal principles as a jury.' The right of summation is an important substantive right. Therefore, we hold that the principle of the Stewart case is equally applicable to nonjury trials as the summation stage of a prosecution is critical and to deny completely such right is prejudicial error. See generally Yopps v. State, 228 Md. 204, 178 A. 2d 879 (1962); 6 A.L.R. 3d 604; 38 A.L.R. 2d 1396."

While it may be true that trial judges are more alert to the circumstances of a witness's testimony, the district attorney should still be held to the same standards of fairness required in a jury trial. Otherwise, it may be feared that the district attorney will not scrupulously exclude such testimony since he will know that its admission will not constitute reversible error. The procedural safeguards against the admission of improper evidence should be an integral part of our system of justice and should not depend on the good faith of district attorneys alone.

I would vacate the judgment of sentence and grant a new trial.

MONTGOMERY, J., joins in this dissenting opinion.