Arthur DALE, H–5302,

v.

N. A. WILLIAMS, Superintendent, S. C. I. Huntingdon.

Civ. A. No. 71–242.

United States District Court, E. D. Pennsylvania.

Feb. 24, 1971.

---

John W. Packel, Defenders Association, Philadelphia, Pa., for plaintiff.

Mark Sendrow, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

WEINER, District Judge.

Having exhausted all available state court remedies the relator has presented to this Court his petition for a writ of habeas corpus. The state court record is adequate for a determination of the merits of the relator's contention and no evidentiary hearing is required. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963). Since the facts are not in dispute, there is presented solely an issue of law.

Our examination of the record indicates that the petitioner was sentenced to a term of imprisonment of not less than seven and one half years nor more than fifteen years, on the charge of rape, to commence at the expiration of a sentence of not less than five years nor more than ten years imposed on the charge of robbery. As succinctly stated by Judge Hoffman in his dissenting opinion [1] "The issue in this case is whether a new trial should be awarded because the prosecutor allowed a co-defendant Joseph Charles, who appeared for the Commonwealth, to testify falsely that no promises of special consideration had been made to him in exchange for his testimony". However, we would also point out that the district attorney who prosecuted the petitioner acted in the same capacity in the Charles case.

The issue focused upon stems from the circumstances that surrounded the acceptance of a plea of guilty entered by Charles who was a participant in the same criminal act. Reference to the record of Charles' guilty-plea hearing reveal the following dialogue:

"Mr. Sprague [the Assistant District Attorney]:

* * * I have been advised that since this proceeding started, as Your Honor heard, no offer, no deal, or commitment of any sort was offered to this defendant, and the Commonwealth was ready to proceed to trial at this time.

I have been advised that the defendant now desires to cooperate with the Commonwealth and to testi-

---

1. Commonwealth v. Dale, 215 Pa.Super. 179, 256 A.2d 871 (1969).

fy for the Commonwealth, at the same time reiterating that he will have no deal or commitment, and I would ask at this time that sentence be deferred."

"The Court:

I would like to ask has he named or have you been able to ascertain the identities of the other young men in this?"

"Mr. Sprague:

May I say that other persons are under arrest and are awaiting trial. I have told counsel and the defendant if the court sees fit to defer sentence, I am going to have Mr. Alessandroni and Detective Winchester speak with the defendant and find out the extent of his testimony and his availability to the Commonwealth."

"The Court:

You promise the Court you are going to name those five men to this detective and do it today. Give them every bit of names, addresses, nicknames and everything else and what they did. *It may save you many, many long years.* Don't involve anybody if it isn't true, but tell the truth on all of them. For if you do, you will be given consideration". (Emphasis supplied).

However, at the relator's trial, the District Attorney asked Charles the following question:

"Q.  Have any promises or deals been made to you by the Commonwealth, or any one else, in return for your testimony?"

"A.  No."

Our task on review of the above is to determine whether a promise of consideration was made to Charles in return for his testimony; Was his testimony in the instant case false? If the testimony was false, did it materially effect the outcome of the trial and was the false denial knowingly acquiesced in by the prosecutor?

█ We have no hesitancy in concluding that a promise was made to Charles and that when he denied being promised consideration his answer was false. We are not inclined to believe that the district attorney intentionally failed to correct the testimony but we do think that the fact that the prosecuting attorney was the same in the Charles and Dale cases supplied a foundation to arrive at a determination of acquiescence and knowledge.

█ Our case law on this subject is well settled and is ruled by the principle of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In *Napue* the Court stated:

" *  *  *  [I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. (citations omitted) The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears". (citations omitted).

In Nash v. Illinois, 389 U.S. 906, 88 S. Ct. 222, 19 L.Ed.2d 223 (1967) Mr. Justice Fortas, with whom The Chief Justice and Mr. Justice Douglass joined, wrote a dissenting opinion in which he observed:

" *  *  *  [A] false denial by the critical State's witness that he was promised leniency in return for his testimony, knowingly acquiesced in by the prosecutor, requires reversal of a state conviction  *  *  *."

Our concern is further deepened by the Court's admonition written in Miller v. Pate, 386 U.S. 1, 7, 87 S.Ct. 785, 788, 17 L.Ed.2d 690 (1967):

"More than 30 years ago this Court held that the Fourteenth Amendment

cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. Mooney v. Holohan, 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791]. There has been no deviation from that established principle. Napue v. People of State of Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed. 2d 1217], Pyle v. State of Kansas, 317 U.S. 213 [63 S.Ct. 177, 87 L.Ed. 214] cf. Alcorta v. State of Texas, 355 U.S. 28 [78 S.Ct. 103, 2 L.Ed. 2d 9]. There can be no retreat from that principle here".

■ We turn now to a consideration of the respondent's assertion that if we were to assume arguendo that Charles was promised some benefit, his false answer should be treated as harmless error. For an error to be held harmless, the Court must be able to declare a belief that it was harmless beyond a reasonable doubt or as stated in Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed. 2d 171 (1963). "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction". See: Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

It is our conclusion that all uncertainty relative to the materiality of a false response to a promise of leniency was laid to rest in Napue v. Illinois, supra, when the court emphasized the principle that:

"The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend". 360 U.S. at 269, 79 S.Ct. at 1177.

■ Governed by precedent, we are constrained to conclude, albeit most reluctantly, that the "Dale" trial was a tainted trial by virtue of the false reply coupled with the prosecutors failure to correct same.