**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey R. MacDONALD, Defendant–Appellant.**

No. 91–6613.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 5, 1992.

Decided June 2, 1992.

Harvey A. Silverglate, Silverglate & Good, Boston, Mass., and Alan M. Dershowitz, Cambridge, Mass., argued (Philip G. Cormier, Thomas C. Viles, Andrew Good, Silverglate & Good, Boston, Mass., Roger C. Spaeder, David A. Hickerson, Zuckerman, Spaeder, Goldstein, Taylor & Kolker; Anthony P. Bisceglie, Bisceglie & Walsh, Washington, D.C., Norman B. Smith, Smith, Follin & James, Greensboro, N.C., and John J.E. Markham, II, Santa Clara, Cal., on brief), for defendant-appellant.

John Fichter DePue, Crim. Div., U.S. Dept. of Justice, Washington, D.C., argued (Robert S. Mueller, III, Asst. Atty. Gen., James S. Reynolds, Chief, Terrorism and Violent Crime Section, Laura Ross Blumenfeld, Crim. Div., U.S. Dept. of Justice, Washington, D.C., Margaret Person Currin, U.S. Atty., Brian M. Murtagh, Sp. Asst. U.S. Atty., and Eric Evenson, Asst. U.S. Atty., Raleigh, N.C., on brief), for plaintiff-appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

## OPINION

DONALD RUSSELL, Circuit Judge:

Jeffrey MacDonald appeals the district court's denial of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2255 (1988). MacDonald seeks relief through a second habeas petition from his 1979 conviction for the murders of his wife

and two daughters. He presents newly discovered evidence, which, he claims, the government suppressed at trial and which, he also claims, discredits the government's case against him and corroborates his exculpatory account of the murders. We find that MacDonald does not meet the stringent requirements of *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), necessary to overcome dismissal of a second or subsequent collateral claim for abuse of the writ. He does not show sufficient cause for failing to raise this evidence in his first habeas petition. Neither does he persuade us that dismissal of the petition would result in a fundamental miscarriage of justice. Accordingly, we affirm that portion of the district court's opinion dismissing MacDonald's petition as an abuse of the writ and decline to reach the merits of his petition.

## I.

We set forth briefly the circumstances of the murders and trial, providing only facts relevant to the newly discovered evidence raised here. The details of this case have been adequately presented in our several prior decisions. *See, e.g., United States v. MacDonald,* 688 F.2d 224 (1982); *United States v. MacDonald,* 632 F.2d 258 (1980); *United States v. MacDonald,* 531 F.2d 196 (1976).

In the early morning of February 17, 1970, the wife and two young daughters of Captain Jeffrey MacDonald, an Army surgeon, were brutally murdered in their home on Fort Bragg Army base. Physical evidence found on the scene and analyzed by government forensic experts convinced federal investigators that MacDonald himself carried out the killings. The United States relied principally on this forensic evidence, and an absence of evidence corroborating MacDonald's story, to prove its case at trial.

MacDonald has consistently maintained his own account of the murders. He claims that a group of drug-crazed intruders, including a woman with blond hair, entered the house, murdered his family and injured him. Government investigators located a woman living locally named Helena Stoeckley, who generally met the description given by MacDonald. She told investigators that she could not remember her whereabouts the night of the murders because of heavy drug use. Her trial testimony was similarly inconclusive. The trial judge then refused to admit Stoeckley's out-of-court statements inculpatory of herself, which were offered into evidence by the defense, including recanted confessions, because Stoeckley proved too unreliable a witness.

A federal jury convicted MacDonald of the murders, and the convictions were affirmed on direct appeal.[1] Counsel for MacDonald then filed the first habeas petition in district court. The petition sought relief based on, *inter alia,* alleged suppression of exculpatory evidence by government prosecutors. The district court denied relief and we affirmed the denial. *United States v. MacDonald,* 640 F.Supp. 286 (E.D.N.C. 1985), *aff'd,* 779 F.2d 962 (4th Cir.1985), and *cert. denied,* 479 U.S. 813, 107 S.Ct. 63, 93 L.Ed.2d 22 (1986).

On October 19, 1990, MacDonald filed a second habeas petition, at issue here, pursuant to 28 U.S.C. § 2255. MacDonald offered newly discovered, and allegedly exculpatory, evidence he claimed the government suppressed during trial in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In addition, MacDonald claimed that the government violated his due process rights by presenting its case in a manner intentionally designed to conceal this exculpatory evidence. The evidence consists of government forensic lab notes describing (1) three blond synthetic hairs found in a hairbrush located in

---

**1.** This Court initially dismissed the conviction under the Sixth Amendment on the grounds that MacDonald had not been afforded a speedy trial. *United States v. MacDonald,* 632 F.2d 258 (1980). The Supreme Court then reversed dismissal, finding no Sixth Amendment violation. *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). On remand, the panel confirmed the conviction, denying the Sixth Amendment claim and various evidentiary claims. *United States v. MacDonald,* 688 F.2d 224 (1982), *cert. denied,* 459 U.S. 1103, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983).

the MacDonald home and (2) black and green wool fibers, not matched to any source in the MacDonald home, found on the murder weapon and on Colette Mac-Donald's body.[2]

MacDonald contends that the lab notes corroborate his story of intruders entering the home and murdering his wife and children. He has consistently maintained that one of the intruders was a woman with blond hair. Other evidence at trial showed that the suspected female intruder, Stoeckley, owned and often wore a cheap blond wig and may have been wearing it on the night of the murders.[3] Investigators located the hairbrush containing the blond hairs near the kitchen telephone in the MacDonald house. In a post-trial confession, Stoeckley recalled answering the MacDonald's telephone during the attacks and then hanging up after the caller asked for Dr. MacDonald.[4]

MacDonald also contends that evidence of various unidentified dark wool fibers found in Colette's mouth, on her arm, and on the wooden club used to murder her is further proof of intruders. These fibers were not matched to any tested source in the MacDonald home. Furthermore, Stoeckley was known to wear black and dark clothing.

Compounding the value of this evidence for MacDonald is the fact that the district court refused to admit Stoeckley's out-of-court confessions into evidence at trial. The court found her confessions untrustworthy due, in part, to the lack of corroborating evidence supporting the presence of intruders. MacDonald, of course, contends that had the lab notes been made known to the district court judge at the time of trial, the court would have allowed into evidence

Stoeckley's out-of-court confessions. He further argues that the cumulative effect of the hair and fiber evidence and the confessions would have been a reasonable doubt in the minds of the jurors.

In reply, the government dismisses the evidence as inconsequential, just as it had done at the time of trial. According to one of its forensics experts, the three blond synthetic hairs found in the brush were made of saran, an inexpensive substance generally used only in doll hair and mannequin wigs. The hairs differed from one another in chemical composition, indicating that they did not originate from the same source. Family photos show that the MacDonald girls owned several dolls, and they were known to brush the dolls' hair. The black and green wool fibers were only a few of several unidentified fibers found on Colette MacDonald and on the murder weapon. Because government experts considered these wool fibers forensically insignificant at the time of trial, they did not attempt to match them to any source in the MacDonald home. One government expert explained that a carpet or rug is particularly conducive to the transfer of fibers, leading the government to conclude during its investigation that the unidentified fibers likely came from contact with one of the carpets in the MacDonald house.

The government further argues that the court still would not have admitted Stoeckley's out-of-court confessions had it known of the evidence presented in this appeal. The government asserts that Stoeckley's mental instability due to prolonged, heavy drug use and her unreliable character were the primary reasons for not admitting the

---

**2.** Counsel for MacDonald challenges suppression of the lab notes themselves and not the actual physical evidence. Counsel concedes that the physical evidence alone does not offer conclusive proof of MacDonald's account of intruders. However, counsel asserts that the notes made by the government's own forensic experts showing unidentified, suspect evidence would have diminished the strength of the government's forensic case.

**3.** Forensic experts have never been able to compare the blond hair strands to Stoeckley's wig

because she burned the wig a few days after the murders.

**4.** After MacDonald's conviction, Jimmie Friar, a mental patient of Dr. MacDonald's, corroborated Stoeckley's statement. He claimed to have called the MacDonald home at 2:00 a.m. on the morning of the murders, heard a woman answer the phone, and then heard a man in the background say, "Hang up the Goddamned phone."

confessions, reasons unchanged by the new evidence.

Moreover, the government claims that MacDonald is now procedurally barred from raising this claim because MacDonald's counsel had possession, if not actual knowledge, of the lab notes at the time of his prior collateral appeal.[5] In 1983–84, in preparation for MacDonald's first collateral appeal, counsel requested and received copies of investigation files from the Army Criminal Investigation Division (CID), the Department of Justice, and the FBI. The files contained lab notes of CID Chemist Janice Glisson describing the blond synthetic hairs and lab notes reflecting the presence of black and green wool fibers. All documents were date stamped upon receipt by MacDonald's counsel, providing evidence that these particular lab notes were actually received in 1983–84. In fact, that portion of Janet Glisson's lab notes discussing the blond synthetic hair was tagged and annotated by defense counsel, showing that a member of the defense team had at least seen and considered the evidence. These are the same documents which present counsel for MacDonald now introduces as newly discovered evidence.

The district court agreed with the government. It issued an exhaustive Memorandum of Decision, carefully addressing and rejecting on the merits each argument raised in this collateral appeal. *United States v. MacDonald*, 778 F.Supp. 1342 (E.D.N.C.1991). Although the court found the petition procedurally barred under *McCleskey v. Zant* as an abuse of the writ, it nevertheless addressed the merits of MacDonald's claims in an effort to ensure justice in this highly public and controversial case. Ultimately, the court based its denial on a finding that the evidence would not have produced a different jury verdict if known to defense counsel at the time of trial.

MacDonald now appeals the district court's denial of his habeas petition.

## II.

As the following discussion will explain, we find the abuse of the writ doctrine, as defined in *McCleskey v. Zant*, — U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), sufficient grounds for disposing of MacDonald's habeas petition.[6] We feel confident that the doctrine, as applied in this case, provides adequate safeguards against dismissal of any truly meritorious claims.[7]

■ Courts have developed the abuse of the writ doctrine in order to curtail endless filings of successive habeas petitions. Successive petitions strike at the finality of a

---

**5.** MacDonald's trial counsel has had access to the physical evidence since before the original trial. Present counsel argues that access should not impute knowledge because the physical evidence of blond synthetic hair and woolen fibers was effectively hidden from MacDonald. It was among thousands of pieces of physical evidence filling an entire jail cell. We do not address this dispute since it is the lab notes, and not the physical evidence itself, that MacDonald now brings into issue.

**6.** Without deciding whether or not *McCleskey* announces a new rule, we find no retroactivity issue here. *See Harris v. Vasquez*, 949 F.2d 1497, 1512 (9th Cir.1991) (*McCleskey* does not announce new rule), *cert. denied*, — U.S. ——, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); *Andrews v. Deland*, 943 F.2d 1162, 1172 n. 7 (10th Cir. 1991) (*McCleskey* does not announce a new rule of substantive law), *cert. denied*, — U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); *McCleskey*, 111 S.Ct. at 1477 (Marshall, J., dissenting) (majority opinion announces new rule). Recently, a majority of the Supreme Court extended application to the civil context the rule that new rules applied retroactively in the deciding case should be applied retroactively to similar pending cases. *James B. Beam Distilling Co. v. Georgia*, — U.S. ——, 111 S.Ct. 2439, 2446, 115 L.Ed.2d 481 (1991); *see Howard v. Haddad*, 962 F.2d 328, 330 (4th Cir.1992). Here, the Supreme Court decided *McCleskey* on April 16, 1991, while MacDonald's second habeas petition was still pending before the district court. The district court did not decide the fate of MacDonald's petition until July 8, 1991. Application of *McCleskey* here complies with *Beam* and furthers justice by treating similarly situated parties, i.e. McCleskey and MacDonald, in the same manner. *See Beam*, 111 S.Ct. at 2446.

**7.** We have considered MacDonald's substantive claims and the district court's disposition of those claims. We do not find it necessary to reach, and, therefore, refrain from exhaustive discussion of, those substantive claims.

judgment. "Neither innocence nor just punishment can be vindicated until the final judgment is known." *McCleskey*, 111 S.Ct. at 1468–69. Further concerns for the allocation of scarce judicial resources underlie the abuse of the writ doctrine. *Id.* at 1469.[8]

The Supreme Court clarified the restrictions on bringing second and subsequent habeas petitions in its *McCleskey* decision. As stated in that case, the abuse of the writ doctrine "in general prohibits subsequent habeas consideration of claims not raised, and thus defaulted, in the first federal habeas proceeding." *Id.* at 1468. The government bears the initial burden of pleading abuse of the writ. It meets its burden by identifying particular claims not raised in a prior habeas petition and asserting abuse of the writ. The burden then shifts to the petitioner, in order to avoid dismissal, to show that failure earlier to raise such claims may be excused under one of two narrow exceptions. Under the first exception, a petitioner can overcome dismissal upon a showing of cause for not raising the claim previously and a showing of prejudice. If petitioner fails to meet the first exception, a court can review the petition only upon a showing "that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* at 1470.

The first exception is not easily met. In asserting a "cause and prejudice" justification, petitioner must show cause by " 'some objective factor external to the defense[,] [which] impeded counsel's efforts' to raise the claim ..." in a prior habeas petition. *McCleskey*, 111 S.Ct. at 1470 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Examples given by the Court of cause are government interference with

raising a claim or unavailability of facts necessary to make such a claim. *McCleskey*, 111 S.Ct. at 1470. Negligence or error in failing to raise a claim are not sufficient to show cause. Likewise, "[a]ttorney error short of ineffective assistance of counsel ... does not constitute cause...."[9] *Id.* Once cause is established, petitioner must then show actual prejudice.

If the petitioner fails to establish cause, a court may still entertain the habeas petition in extraordinary cases where failure to do so would result in a fundamental miscarriage of justice. This is a narrower exception intended only to relieve from conviction one who is factually innocent of a crime. *Id.* A petitioner can satisfy this exception only where he or she makes a "colorable showing of factual innocence." *Id.* at 1471 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). That is, a petitioner must "show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted ... and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt." Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi. L.Rev. 142, 160 (1970); *see McCleskey*, 111 S.Ct. at 1470; *Kuhlmann*, 477 U.S. at 454–55 n. 17, 106 S.Ct. at 2627 n. 17 (adopting Judge Friendly's explication).

### III.

We now apply the abuse of the writ doctrine to the case before us. The parties do not dispute that the government has satisfied its initial burden of proof by properly pleading abuse of the writ. Our

---

**8.** Federal statutes governing successive habeas petitions do not foreclose application of the judicially created abuse of the writ doctrine, under which we decide this case. *See* 28 U.S.C. §§ 2244(a), 2255 (1988). The statutes codify the basic principles of the judicially created doctrine but "do[ ] not state the limits on the district court's discretion to entertain abusive petitions." *McCleskey*, 111 S.Ct. at 1466.

**9.** But note that where no Sixth Amendment right to counsel attaches to the proceeding, an ineffective assistance claim cannot be sustained. Prisoners have no right to counsel in a collateral proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). Therefore, attorney error in an initial habeas proceeding cannot serve as cause to review subsequent petitions.

first determination, then, is whether Mac-Donald has shown cause for not raising this newly discovered evidence in his prior habeas petition. We easily conclude that he has not. Lab notes relating to the blond hairs, now claimed significant in corroborating MacDonald's account of the murders, were seen and passed over by counsel in the previous habeas appeal. As found by the district court, a law clerk had tagged the relevant lab report and brought it to the attention of the legal team working on the first habeas petition. Members of the team considered its evidentiary significance and made a tactical decision not to use the evidence. Such deliberate bypass clearly cannot survive abuse of the writ analysis on a second habeas appeal. *See McCleskey*, 111 S.Ct. at 1467, 1471. Although such decision by counsel may in retrospect be deemed attorney error, erroneous strategic decisions do not amount to cause. *See supra* note 9.

MacDonald similarly fails to show cause for not raising in his first habeas petition the lab notes pertaining to the dark wool fibers. The lab notes were in the possession of MacDonald's counsel in 1983–84, prior to the filing of the first petition, as evidenced by a date received stamp. Even though these notes may not have been known to MacDonald's counsel, abuse of the writ is not confined to deliberate decisions to bypass information. "[A] petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice." *McCleskey*, 111 S.Ct. at 1468. Thus, if a petitioner should have known and understood the significance of evidence through reasonable investigations prior to filing a first habeas petition, such petitioner has no cause for not then raising the claim. We find that MacDonald's first habeas counsel, through reasonable and diligent investigation, should have discovered the lab notes in their possession. No external force, beyond the control of MacDonald and his defense team, interfered with discovery. We will not excuse as cause failure to review and consider the significance of evidence within counsel's possession.

MacDonald's counsel argues that government concealment of this evidence at trial prevented counsel from later discovering and then raising the evidence in the first habeas petition. While MacDonald may have an argument for cause at trial, the argument is inapposite here. Counsel's possession of the relevant documents prior to the first habeas petition negated any concealment claim. We find that Mac-Donald has made no credible showing of cause.

Having dispensed with the cause and prejudice exception, we now determine whether MacDonald has shown that dismissal of his petition would result in a fundamental miscarriage of justice. This is a difficult showing to make. Courts are instructed to grant review under this exception only in "extraordinary instances." *McCleskey*, 111 S.Ct. at 1470. We find that this case does not constitute such an instance. The evidence raised here, when considered with all the trial evidence, simply does not rise to a "colorable showing of factual innocence" necessary to show a fundamental miscarriage of justice. It neither supports MacDonald's account of the murders nor discredits the government's theory. The most that can be said about the evidence is that it raises speculation concerning its origins. Furthermore, the origins of the hair and fiber evidence have several likely explanations other than intruders. The evidence simply does not escalate the unease one feels with this case into a reasonable doubt.

We have carefully reviewed the voluminous record of evidence in this case, beginning with the original military Article 32 proceedings through the present habeas petition, which contains over 4,000 pages. Yet we do not find anything to convince us that the evidence introduced here, considered with that previously amassed, probably would have raised reasonable doubts in the minds of the jurors.

We are persuaded that this is precisely the type of collateral appeal the Court through *McCleskey* intended to obstruct and deter. Here, over twenty years after

the event of the crime, MacDonald reopens his case with specious evidence. While we are keenly aware of MacDonald's insistence as to his innocence, at some point we must accept this case as final. Every habeas appeal MacDonald brings consumes untold government and judicial resources. Furthermore, successive appeals of little merit must cruelly raise and then disappoint the hopes of one, like MacDonald, faced with a long term of incarceration. We feel that our review of MacDonald's case through the mechanism of the abuse of the writ doctrine has been thorough and fair. Any evidence truly pointing to MacDonald's innocence would have prompted a review on the merits by this Court.

## CONCLUSION

Finding that MacDonald's second habeas petition constitutes an abuse of the writ, we affirm the district court's order denying the petition.

AFFIRMED.