**UNITED STATES of America**

v.

**Jeffrey R. MacDONALD**

**Nos. 75–26–CR–3, 90–104–CIV–3–F.**

United States District Court,
E.D. North Carolina,
Fayetteville Division.

Sept. 2, 1997.

Harvey A. Silverglate, Boston, MA, for MacDonald.

Robert S. Mueller, III, James S. Reynolds, Brian M. Murtagh, Asst. U.S. Attys., John F. DePue, U.S. Dept. of Justice, for U.S.

### ORDER

JAMES C. FOX, Chief Judge.

This matter again is before the court on Jeffrey MacDonald's "Motion to Reopen 28 U.S.C. § 2255 Proceedings and for Discovery," filed April 22, 1997 ("motion to reopen"). MacDonald has filed an extensive memorandum of law and hundreds of pages of affidavits and exhibits in support of his motion to reopen. In response, the Government filed on May 12, 1997, a motion to dismiss and suggestion, in the alternative, to transfer the matter to the Court of Appeals, along with a memorandum of law. MacDonald replied to these Government filings on May 27, 1997. Also pending before the court is MacDonald's motion for leave to file a supplemental affidavit, which the Government opposes.

The undersigned drew this matter following the death of the Honorable Franklin T. Dupree, Jr., who presided over the trial and all subsequent proceedings herein until his death in December, 1995, and the recusal of the Honorable Malcolm J. Howard by Order of April 25, 1997. The court has waived the page limitations for supporting memoranda so that both parties might fully present their positions. The undersigned has carefully read and considered everything the parties have filed. Neither party has requested oral argument on the motion to reopen, and the court finds that none shall be necessary for a resolution of the motion.[1] Local Rule 4.09, EDNC. While the court DENIES the motion to reopen, the court TRANSFERS this matter to the United States Court of Appeals for the Fourth Circuit for consideration of certification as a successive motion under 28 U.S.C. § 2255. 28 U.S.C. §§ 2255, 2244, as amended by Pub.L. No. 104–132, Title I, §§ 101, 105, 106, 110 Stat. 1217, 1220 (1996). Accordingly, the Government's motion to dismiss and suggestion, in the alternative, to transfer to the Court of Appeals, is DENIED IN PART and ALLOWED IN PART. Finally, MacDonald's motion for leave to file a supplemental affidavit is ALLOWED.

### I. Statement of the Case

By his motion now before the court, MacDonald seeks to reopen the proceedings on his petition for post-conviction relief, filed pursuant to 28 U.S.C. § 2255 on October 19,

---

1. The court will not grant MacDonald's request for an evidentiary hearing, MacDonald's Reply at 1, because, as explained fully below, he has not shown sufficient evidence of a "fraud upon the court."

1990 ("the 1990 petition"). Judge Dupree denied that 1990 petition by Order dated July 8, 1991. *United States v. MacDonald,* 778 F.Supp. 1342 (E.D.N.C.1991). The United States Court of Appeals for the Fourth Circuit affirmed. *United States v. MacDonald,* 966 F.2d 854 (4th Cir.), *cert. denied,* 506 U.S. 1002, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992). This court will not again repeat in detail the circumstances of the murder of MacDonald's family, his subsequent conviction for those murders, or the numerous appeals and other legal proceedings herein. However, a brief recitation of the history of this famous case and, particularly, the proceedings on the 1990 petition which MacDonald seeks to reopen by his motion, is necessary to an understanding of the motion and its resolution.

MacDonald was an Army physician living at Fort Bragg, North Carolina, with his wife, Colette, and two young daughters, Kimberly and Kristen. In the early morning hours of February 17, 1970, Colette, Kimberly, and Kristen were brutally clubbed and stabbed to death in their home. MacDonald, who was present in the home, told military police officers who responded to his call for help that he and his family had been attacked by a group of drug-crazed hippie intruders consisting of several men and a blond woman wearing a floppy hat. He has stood by this story ever since. In fact, shortly after the murders, a woman named Helena Stoeckley surfaced who generally fit MacDonald's description and who related to several individuals her belief that she had been involved in the crime.

However, because of the physical evidence found at the crime scene, Government investigators became convinced that MacDonald himself had committed the murders. The crime scene yielded forensic evidence which was inconsistent with MacDonald's story that he struggled with intruders who murdered his family and wounded him. Following numerous legal twists over the course of many years, MacDonald came to trial in Raleigh in July, 1979, for the murder of his family. A crucial moment in the trial came when the defense called as a witness Helena Stoeckley,

whom authorities located in South Carolina and took into custody pursuant to a material witness warrant. Stoeckley did not confess on the witness stand; rather, she testified that, due to heavy drug use on the night of February 16, 1970, she had no memory of the critical hours. She did admit, however, to owning a floppy hat and a blond wig, which she had burned shortly after the murders for fear that it might link her to the crimes.

As Stoeckley did not testify as MacDonald had hoped, he sought to call as witnesses those to whom Stoeckley had earlier related her belief of her involvement. Judge Dupree, however, after a voir dire examination of these proposed witnesses, would not allow the testimony because of the utter unreliability of Helena Stoeckley and the lack of any corroborating evidence of her presence in the MacDonald home on the night of the murders. On August 29, 1979, the jury convicted MacDonald of two counts of second-degree murder and one count of first-degree murder, and this court sentenced him to three consecutive terms of life imprisonment. Following further legal proceedings, the United States Supreme Court denied certiorari on MacDonald's final direct appeal in 1983.

In 1984, MacDonald filed his first post-conviction motions for a new trial and for a writ of habeas corpus, on the basis of newly discovered evidence and other grounds. Judge Dupree denied the motions, and the Fourth Circuit affirmed. *United States v. MacDonald,* 640 F.Supp. 286 (E.D.N.C.1985), *aff'd,* 779 F.2d 962 (4th Cir.1985), *cert. denied,* 479 U.S. 813, 107 S.Ct. 63, 93 L.Ed.2d 22 (1986).[2]

## II. The 1990 Petition

MacDonald filed a second petition for a writ of habeas corpus on October 19, 1990, the petition which he now seeks to revive by the motion to reopen. In the 1990 petition MacDonald sought "to vacate his conviction on the grounds that the prosecution ... withheld laboratory notes written by government agents which would have aided the defense, and exploited the suppression of the ... lab notes by knowingly presenting a false

---

**2.** For a list of citations of all previously reported opinions in this matter, see *MacDonald,* 778

F.Supp. at 1345.

and perjurious picture of the evidence and the underlying facts." *Id.* at 1344. MacDonald based his petition in part on handwritten laboratory notes regarding unmatched blond synthetic hairs, as long as 24 inches, found on a hairbrush taken from the MacDonald home. He argued that the prosecution's failure to turn over to him these lab notes prior to trial violated the doctrine of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, because the notes and the synthetic hairs themselves would have corroborated his account of the murders, that a group of drug-crazed hippies, including Helena Stoeckley in her blond wig, broke into his house and attacked him and his family. *MacDonald,* 778 F.Supp. at 1349. MacDonald also argued that the prosecution's manipulation of the trial testimony of expert witnesses to conceal the existence of hair and fiber evidence violated his constitutional rights under *Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), and its progeny. *MacDonald,* 778 F.Supp. at 1349.

In denying the 1990 petition, Judge Dupree first determined that the allegedly suppressed evidence was not material—that is, that the jury would not have acquitted MacDonald had his lawyers been aware of the allegedly suppressed lab notes at the time of trial. The court wrote,

> [C]lose analysis of the actual fiber evidence at issue reveals that the fibers provide little, if any, support for MacDonald's account of the crimes. In order to formulate its response in this action, the government submitted the fibers and hair at issue to an FBI forensic examiner, Michael P. Malone, for reexamination. According to Malone, the blond synthetic fibers found in Colette's clear-handled hairbrush and discussed in the lab notes were not consistent with blond wig hairs from any known wig fibers currently in the FBI laboratory reference collection. Of the four synthetic fibers from the brush which have been analyzed, one matches a grey wig reportedly owned by Colette and three are composed primarily of "saran," a substance which is not suitable for human wigs, but is used to make mannequin and doll hair, dust mops, and patio screens. MacDonald has presented no evidence that blond saran

fibers have ever been used in the manufacture of human wigs. While MacDonald argues that Stoeckley's blond wig, which was described by one witness as "stringy," may have been a mannequin wig, such speculation is unsupported by any evidence in the record.

*Id.* at 1350–51.

The court also found, however, alternate, independent bases for denying the 1990 petition. Judge Dupree found that the Government attorneys had not violated the requirements of *Brady* because, prior to trial, they afforded MacDonald's experts the opportunity to examine and test the actual fibers at issue, and because the Government attorneys had not read the lab notes regarding the fibers and were not aware of any potentially exculpatory material therein. *Id.* at 1353–54. Finally, Judge Dupree found the 1990 petition barred by the doctrine of abuse of the writ, since the lab notes, the information upon which the 1990 petition was based, were in MacDonald's possession in 1984, when he filed his first petition, and MacDonald had failed to show "cause and prejudice" or "that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* at 1356–60 (quoting *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)). Thus, the court denied the 1990 petition on three separate and independent grounds—that the "new evidence" would not have been material to the outcome of the trial, that the mandates of *Brady* were not violated by the Government attorneys, and that the 1990 petition was procedurally barred by the doctrine of abuse of the writ.

The Fourth Circuit Court of Appeals affirmed on only the third ground, abuse of the writ, declining to reach the merits of the petition.

> We find that MacDonald does not meet the stringent requirements of *McCleskey v. Zant,* 499 U.S. 467 [111 S.Ct. 1454, 113 L.Ed.2d 517] (1991), necessary to overcome dismissal of a second or subsequent collateral claim for abuse of the writ.... Accordingly, we affirm that portion of the district court's opinion dismissing MacDonald's petition as an abuse of the writ

and decline to reach the merits of his petition.

*United States v. MacDonald,* 966 F.2d 854, 856 (4th Cir.), *cert. denied,* 506 U.S. 1002, 113 S.Ct. 606, 121 L.Ed.2d 542 (1992).

### III. The Motion to Reopen

By his motion to reopen,

MacDonald seeks to have the 1990 petition re-opened on the ground that the government submitted to this Court affidavits of FBI Special Agent Michael P. Malone which were materially false and misleading concerning facts which were central to this Court's dismissal of the 1990 petition, and to the Fourth Circuit Court of Appeals' affirmance of that dismissal, namely, whether or not certain long blond fibers made from a substance called Saran, found at the crime scene, were used in the manufacture of wigs for human cosmetic purposes prior to the time of the crime.

(Mot. to Reopen at 1.) MacDonald attacks two affidavits of Michael P. Malone, senior examiner of the Hairs and Fibers Unit of the FBI Laboratory in Washington, D.C. The Government had submitted the saran fibers in question to Malone for analysis in preparing its response to the 1990 petition, and Judge Dupree cited Malone's testimony in his Order denying the petition. *MacDonald,* 778 F.Supp. at 1350–51.

Malone testified in those affidavits, in substance, that the saran fibers likely came from a doll and not from a wig. In his first affidavit, dated February 14, 1991, he stated,

"All of these saran fibers ... are consistent with the type of fibers normally used in the production of doll hair and are similar to a known sample of saran doll hair from the FBI Laboratory reference collection.... These fibers ... are not consistent with the type of fibers normally used in the manufacture of wigs, and based on my comparisons, are not like any of the known wig fibers currently in the FBI Laboratory reference collection."

(Aff. of Michael P. Malone, Ex. 1 to Aff. of Philip G. Cormier No. 1, at 7.)

Also, Malone testified in a May 21, 1991, supplemental affidavit as follows:

4. [T]o the extent that petitioner contends that the "22–inch blond synthetic" fibers ... are consistent with having originated from a cosmetic blond wig allegedly owned by Helena Stoeckley, there is no factual or scientific basis for this conclusion. I base my statement on the following facts and observations.

\* \* \* \* \* \*

5. [O]ne [saran fiber] matched the FBI Laboratory's known saran doll hair reference exemplar ... and did not match any wig exemplar in the reference collection. [FN1] Similar examinations performed on [another saran fiber] revealed a single light blond striated saran fiber, which was 22–inches in length, and also did not match any wig exemplar in the FBI reference collection.... Therefore, I can state that the only blond synthetic fibers which are 22 inches or longer and which were removed from Exhibit K, E–323 [the clear-handled hairbrush], are saran, which does not resemble human hair, and not modacrylic, which does resemble human hair.

---

FN1. The FBI Laboratory's reference collection of fibers has been maintained for over forty years. Among other items, it contains numerous samples from wigs, all of which I have personally examined and none of which revealed a known wig exemplar of saran. Rather all of the known wig exemplars are composed of polyvinyl chloride (PVC), modacrylic or human hair.

\* \* \* \* \* \*

6. In addition to performing physical examinations in this case, I have consulted numerous standard references (see Exhibits 1–6 attached to this affidavit) which are routinely used in the textile industry and as source material in the FBI Laboratory, concerning the industrial applications for fibers, including saran. None of these standard references reflect the use of saran fibers in cosmetic wigs; however, they do reflect the use of saran fibers for wigs for dolls and manikins, in addition to such uses as dust mops and patio screens. [Citation omitted].

7. Further, based upon my own investigation and research in this case, I can state that saran has the following physical characteristics which make it unsuitable for use in cosmetic wigs, in which the objective is to have the wig hair appear indistinguish-

able from natural human hair. Saran is very straight, is only manufactured as a continuous monofilament, does not lay or drape like human hair, and is also too shiny to resemble human hair. Lastly, saran can not be manufactured as a "tow" fiber, which is essential to the cosmetic wig manufacturing process. [FN3.]

FN3. A "tow" is a large group of continuous filaments, without any definite twist, which is cut into definite lengths.

8. Based upon these factors described above, and in the absence of any evidence to the contrary, I conclude that the 22 and 24 inch blond saran fibers in this case are not cosmetic wig fibers.

(Supp. Aff. of Michael P. Malone, Ex. 2 to Aff. of Philip G. Cormier No. 1, at 2–4.)

MacDonald's attack on the credibility of this testimony began even before the conclusion of the proceedings on the 1990 petition, and culminates in the motion now before the court. Following Judge Dupree's denial of the 1990 petition, and in the course of their appeal therefrom, MacDonald's defense team uncovered two standard reference texts on textiles that, contrary to Malone's assertions, *did* state that saran could be manufactured in "tow" form and *was* used in the manufacture of wigs. MacDonald's lawyers cited these texts, Dembeck and Stout, in their appeal to the Fourth Circuit, (Exs. 3–6 to Aff. of Philip G. Cormier No. 1), but that court did not address the controversy in its decision.

After the Fourth Circuit affirmed Judge Dupree's denial of the 1990 petition, the MacDonald defense team continued its investigation into Malone's testimony and the characteristics and uses of saran. It now claims that the Government had acquired, prior to filing its response to the 1990 petition and Malone's affidavits, information which contradicted, first, Malone's claim that saran was not and could not be manufactured in a form suitable for use in wigs, and second, the Government's "repeated assertions" that the saran fibers at issue had likely come from a doll owned by MacDonald's daughters.

Briefly, this contention is based upon the following: 1) evidence that the FBI had in its own reference collection the Dembeck and Stout texts that stated that saran could be manufactured in tow form and was used in wigs, 2) evidence that Government agents interviewed a textile industry executive who would not testify, as they wished, that saran could not be manufactured in tow form and was not used in wigs [3], and 3) evidence that Government agents interviewed two doll experts in California who told them that 22 or 24 inch saran fibers probably did not come from a doll. MacDonald now claims that this evidence indicates that Malone and the Government committed a fraud upon the court when, in 1991, Malone testified in his affidavits that saran could not be manufactured in tow form and was thus not suitable for use in wigs. He also cites an article from the *Wall Street Journal* and a report of the Department of Justice Inspector General critical of the work of Malone and the FBI laboratory in other cases.

Finally, MacDonald offers affirmative evidence, recently accumulated by his defense team, that saran was used in wigs prior to 1970. This new evidence, consisting of the statements of wig and fiber industry executives only recently located by MacDonald, is not relevant to MacDonald's claim that Malone committed a fraud upon the court in 1991. Rather, he submits this new evidence in an attempt to demonstrate his factual innocence.

On his fraud claim, MacDonald argues that Judge Dupree and the Fourth Circuit Court of Appeals relied on Malone's testimony in concluding that evidence of the saran fibers would not have changed the outcome of the trial and thus could not serve as a basis for habeas relief, and that the court therefore should reopen the proceedings on the 1990 petition. MacDonald seeks discovery, including access to various items of physical evidence examined by Malone and the FBI lab, as well as other items such as unsourced hairs found in critical locations at the crime scene, for testing using new DNA technolo-

3. As explained below, this textile industry executive did not express the opinion that saran could be manufactured in tow form and *was* used in wigs, either. He simply declined to sign an affidavit Government attorneys drafted for him because he did not consider himself an expert on saran.

gy. Ultimately, he seeks allowance of the 1990 petition and a new trial. For the reasons discussed below, MacDonald is not entitled to reopen the 1990 petition.

### IV. Discussion

MacDonald bears a heavy legal burden on the motion to reopen. Under principles governing an analagous motion pursuant to Federal Rule of Civil Procedure 60(b)(3), MacDonald, as the moving party, must establish fraud by clear and convincing evidence, and he must show that this fraud prevented him from fully and fairly presenting his case on the 1990 petition. "The motion will be denied if it is merely an attempt to relitigate the case or if the court otherwise concludes that fraud or misrepresentation has not been established." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2860 at 314–15 (1995). Further, as the late Justice Brennan wrote when sitting on the New Jersey Supreme Court,

> [T]estimony that warrants disturbance of a final judgment must be shown by clear, convincing and satisfactory evidence to have been, not false merely, but to have been willfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result.

*Shammas v. Shammas,* 9 N.J. 321, 88 A.2d 204, 208 (1952).

As the court discusses below, MacDonald has shown neither that Malone's testimony was material to the outcome of the litigation on the 1990 petition, nor clear and convincing evidence of any fraud.

### A. Malone's testimony was not material to the disposition of the 1990 petition.

First, and most significantly, MacDonald grossly overstates this court's and the Fourth Circuit's "reliance" on Malone's affidavits in their decisions on the 1990 petition. (Mem. in Supp. of Mot. to Reopen at 3–7, 17–18, 20–21, 38.) As noted above, Judge Dupree denied the petition on *two alternate and independent grounds,* neither of which is called into question by the motion to reopen. Mention of these alternate and independent grounds is conspicuously absent in MacDonald's voluminous filings. Nor does

MacDonald acknowledge that the Fourth Circuit affirmed the denial of the 1990 petition only on grounds of abuse of the writ, declining to reach the merits of the petition. Moreover, MacDonald called to the attention of the Fourth Circuit in his appeal in 1992 Malone's alleged "selective citation" of textile reference texts which omitted "wigs" as an end use for saran, as well as the Dembeck and Stout texts which did note that saran was used in wigs. (*See* Exs. 3 & 4 to Aff. of Philip G. Cormier No. 1.) Apparently finding it unnecessary to address the controversy, the Fourth Circuit held only that MacDonald's petition was barred by the doctrine of abuse of the writ, because he could have raised his claims in his earlier petition for habeas corpus.

MacDonald argues that, had Malone not testified as he did, the court would have viewed the 1990 petition and the entire evidence in a different light, perhaps invoking the narrow exception to the abuse of the writ doctrine for a "fundamental miscarriage of justice." (MacDonald's Reply at 2–6.) He contends, "In defending against MacDonald's 1990 petition, the government misled this Court, the Court of Appeals, and the defense by (1) withholding critical exculpatory evidence which was clearly material to the outcome of the proceedings, and (2) painting a false picture by claiming that the source of the blond Saran fibers found at the crime scene could not have been a wig for human use, as opposed to a doll." (Mem. at 37–38.) MacDonald claims this conduct violated his rights under *Brady* and under *Alcorta v. Texas,* 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), respectively. Ironically, this contention mirrors MacDonald's argument six years ago on the 1990 petition itself, that the Government attorneys knowingly withheld critical evidence (the handwritten lab notes documenting the saran fibers) which was clearly material to the outcome of the proceedings (i.e., which would have provided the missing forensic support for MacDonald's version of the facts), in violation of *Brady,* and by painting a false picture of the known forensic evidence, in violation of *Alcorta.* But in 1991 Judge Dupree rejected MacDonald's argument based on *Brady* and *Alcorta* that the lab notes and the existence of the saran

fibers would have changed the tenor of the entire body of evidence, persuading the trial judge to admit Helena Stoeckley's out of court "confessions," and, in domino fashion, thereby producing in the jurors' minds more than a reasonable doubt as to his guilt. And this court now rejects MacDonald's argument that the evidence the Government attorneys allegedly "withheld" in 1991 would have produced in Judge Dupree's mind the notion that dismissing the 1990 petition for abuse of the writ would result in a fundamental miscarriage of justice.

For this reason, the Government's conduct in defending the 1990 petition did not violate MacDonald's Due Process rights under either *Brady* or *Alcorta*. Even if the Government can be said to have "withheld" evidence in its possession, consisting of textbook references and witness statements that saran could be manufactured in tow form and was used in wigs prior to 1970, there is no "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding [on the 1990 petition] would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.) (withheld evidence must have been material for Constitutional error under *Brady* to have occurred)). Nor is there "any reasonable likelihood that the false testimony could have affected" Judge Dupree's, or the Court of Appeals', decision. *See Bagley*, 473 U.S. at 679–80 n. 9, 105 S.Ct. at 3382 n. 9.

*B. MacDonald has shown insufficient evidence of a "fraud upon the court".*

■ Second, this court finds MacDonald's allegations that Malone committed a "fraud upon the court" and that his testimony was "knowingly false and misleading when made" cavalier and unverified. Again, MacDonald bases his allegations on three "revelations" resulting from his Freedom of Information Act ("FOIA") requests of the Department of Justice following the conclusion of the litigation of the 1990 petition: 1) evidence that the FBI had in its own reference collection the Dembeck and Stout texts that stated that saran could be manufactured in tow form and was used in wigs, 2) evidence that Malone

and other Government agents interviewed a textile industry executive who would not testify, as they wished, to the contrary, and 3) evidence that Malone and other Government agents interviewed two doll experts in California who told them that 22 or 24 inch saran fibers probably did not come from a doll. The court shall address each item in turn.

MacDonald's "evidence" that the FBI's reference library included the Dembeck and Stout texts prior to Malone's execution of his affidavits consists largely of an identification stamp and a handwritten notation, both of unknown origin or significance, on the cover page of the FOIA-released Dembeck excerpt. (Aff. of Philip G. Cormier No. 1 at 24–30.) This "evidence," even construed in the light most favorable to MacDonald, does not expose any statement in Malone's affidavits as knowingly untrue when made. Malone testified in paragraph 6 of his supplemental affidavit only that he had consulted "numerous standard references," not "every standard reference in the library," and there is no indication Malone or anyone else for the Government consulted the Dembeck or Stout texts and decided to ignore them. Moreover, as noted above, MacDonald called to the attention of the Fourth Circuit Court of Appeals the Dembeck and Stout texts and his belief that Malone had "selectively cited" standard references to suit the Government's purposes. That court failed to address the issue—probably not because of "the power of the FBI Lab's long-standing reputation for probity and accuracy," (Mem. of Law in Supp. of Mot. to Reopen at 20), so much as because the texts were not a part of the record on appeal and because the court rested its decision on the doctrine of abuse of the writ. *See* Tr. of Oral Argument, Ex. 3 to Aff. of Philip G. Cormier No. 1; *MacDonald*, 966 F.2d 854.

Similarly, MacDonald's complaints that the Government's 1990 field investigation into the end uses of saran unearthed "exculpatory" information that contradicted Malone's later testimony are unconvincing. First, MacDonald claims that on December 4, 1990, Malone, accompanied by other Government agents, contacted A. Edward Oberhaus, Jr., an executive at Kaneka America Corporation,

which produces modacrylic (non-saran) fibers for use in wigs and doll hair. Reportedly, Oberhaus told the agents that, "based on his limited knowledge, Saran fibers were used in the doll industry, but that this did not mean that Saran was not used in the wig industry as well." (Mem. in Supp. of Mot. to Reopen at 26.)

Oberhaus refused to sign an expert affidavit drafted for him by the Government agents to the effect that saran was not used in wigs because it could not be produced as a tow fiber, and that saran was primarily used in the manufacture of doll hair, even though an FBI Form 302, Report of Interview, completed by the interviewing agent shortly after the 1990 meeting with Oberhaus, reflects that Oberhaus did so state in his interview. Rather, Oberhaus submitted an affidavit of his own drafting, which the Government did not use. Oberhaus' affidavit stated only that "Wigs and hairpieces during the period 1960 to date have most often been manufactured with human hair, modacrylic fibers, *other fibers* or a *combination of any of these filaments.*" (Aff. of Philip G. Cormier No. 1 at ¶ 50, emphasis supplied.)

However, neither MacDonald nor Oberhaus has questioned the accuracy of the FBI Form 302, Report of Interview, completed shortly after the 1990 meeting with Oberhaus. This Report of Interview closely resembles the draft affidavit which Oberhaus refused to sign because he did not consider himself an expert on saran. (*Compare* Aff. of Philip G. Cormier No. 1, Ex. 12 *with* Ex. 10 and Aff. of Philip G. Cormier No. 1 at 31–38; *see* Opp'n of the United States to Mot. to Reopen at 41.) Whether Oberhaus reflected on his interview with the agents and later decided he had not been precise in his spoken statements, the court cannot know. In any event, the court does not view Oberhaus' statement or his refusal to sign the draft affidavit as exculpatory, with a concomitant duty incumbent upon the Government attorneys to disclose the same.

Next, on December 5, 1990, Malone and other Government agents interviewed Judith Schizas and Mellie Phillips, two employees of Mattel, Inc. knowledgeable about dolls. MacDonald's defense team claims to have learned, from the Form 302 Reports of Interviews obtained through FOIA requests, and from new affidavits obtained directly from Schizas and Phillips, that these ladies "provided [Malone and the agents] with ... information which directly contradicted the subsequent sworn claims by Malone, filed by the government, as to the provenance of the 22 inch and 24 inch Saran fibers found at the crime scene." (Mem. in Supp. of Mot. to Reopen at 28.) Reportedly, Phillips told the agents that saran *was* made in tow form. Both Schizas and Phillips told the agents that they were not aware of any doll made by Mattel that had saran hair fibers as long as 24 inches. Schizas told the agents that "while it was 'possible' [that the 22 inch and 24 inch saran fibers had come from a doll], it was 'not probable,' because even if fibers of that length were used in a doll, it would be very difficult to pull out an entirely intact fiber because of the way that the fibers are rooted...." (*Id.* at 30–31.)

MacDonald decries,

> None of the information which Phillips and Schizas state they imparted to Malone and the other government investigators, including Schizas' and Phillips' FBI 302s [reports of interviews], was ever disclosed to the defense nor included in any government filing with this Court. The defense never knew that the government had even spoken with Schizas and Phillips, let alone that they had provided the government with exculpatory information which put the lie to the government's claims that the source of the long blond Saran fibers found at the crime scene was a doll.

(*Id.* at 31–32.) As to Schizas' and Phillips' being unaware of any Mattel doll with saran hair as long as 24 inches, and as to Schizas' explanation of why the fibers did "not probabl[y]" come from a doll, the court knows of no obligation incumbent upon the Government to disclose this information to the court or to MacDonald. The information was not "exculpatory" in the true sense, in that it did not tend to show MacDonald's innocence. Rather, the information tended to *disprove a collateral Government theory* regarding certain evidence, which theory the Government posited as *one alternate* to MacDonald's theory of the origin of the saran fibers. This

controversy is one step removed from the question of MacDonald's guilt or innocence.

Moreover, in addition to the information Schizas and Phillips gave the agents which MacDonald seeks to highlight, these ladies also told the agents that "one might possibly find a doll hair fiber that long [22 or 24 inches] if the fiber were doubled over in the hair rooting process to produce two 11–12 inch hairs...." (*Id.* at 30; *see* Opp'n of the United States to Mot. to Reopen at 42.) Further, Schizas and Phillips contradicted each other. Phillips told the agents that her best recollection was that Mattel never made any doll, other than a Barbie doll with 3 and a half or 4 inch hair, using saran type material, and that no other doll manufacturers used saran. In contrast, Schizas told the agents that, prior to 1970, the longest length saran used by Mattel was in the "Charmin' Chatty" doll and was 16–17 inches long, but that Mattel used saran as long as 18 inches in a doll manufactured in approximately 1973. (Mem. in Supp. of Mot. to Reopen at 29 n. 11.) When these ladies' complete statements are considered in context, they do not "put the lie to the government's claims that the source of the long blond Saran fibers found at the crime scene was a doll."

The only contradiction MacDonald has shown between what any witness reportedly told Malone and the substance of Malone's affidavits is Phillips' current recollection that she told the Government agents, during her December, 1990, interview, that saran *was* made in tow form, and Malone's testimony that saran could not be made in tow form. (*See* Ex. 14 to Aff. of Philip G. Cormier No. 1 at 2.) But Phillips' purported statement is not recorded in the FBI Form 302, Report of Interview (Ex. 1 to Ex. 14 to Aff. of Philip G. Cormier No. 1), and—not to cast aspersions on Phillips' credibility—memories inevitably fade and warp with the passage of time. Further, even if Phillips did tell the agents that saran could be manufactured in tow form, this contradicted Oberhaus' statement that it could not, as recorded in the Form 302 report of his interview. (Opp'n of the United States to Mot. to Reopen at 42–43.)

MacDonald has submitted extensive legal arguments that the court has the power to reopen a judgment final for years to rectify a fraud upon the court. This the court does not doubt.[4] But as the court has discussed, MacDonald has not Made a sufficiently strong showing of any fraud to cause this court to doubt the integrity of the predicate for Judge Dupree's 1991 decision. Unlike the cases cited by MacDonald in which the wronged party produced irrefutable evidence of fraud, *see* Mem. in Supp. of Mot. to Reopen at 40–44, MacDonald here has produced only possibilities, amplified by hyperbole. In one of the cases cited by MacDonald, the Supreme Court wrote,

> This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after discovered evidence, is believed possibly to have been guilty of perjury. Here ... we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals.

*Hazel-Atlas Glass v. Hartford–Empire Co.*, 322 U.S. 238, 245–46, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944). Here, however, Mac-Donald has not shown a "deliberately planned and carefully executed scheme to defraud;" he has at the very most raised the specter of "a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury."[5] *Id.* The law in this regard raises much more substantial obstacles to, and presumptions against, revisiting the prior judgment. *See, e.g., United States v. Custis*, 988 F.2d 1355 (4th Cir.1993), *aff'd*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) (setting forth five-prong standard for granting new trial where newly discovered evidence tends to show witness may have committed perjury at criminal trial).

Finally, MacDonald outlines evidence of what he calls a "pattern of deception" by Malone in other cases, evidence which includes excerpts from the Final Report of Department of Justice Inspector General Mi-

---

**4.** The court need not address the Government's jurisdictional arguments, Opp'n of the United States to Mot. to Reopen at 33–38, due to the failure of the motion to reopen on its merits.

**5.** As the court has shown, even that characterization applied to these facts would be exaggerated.

chael R. Bromwich, *The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives–Related and Other* Cases, dated April 15, 1997; and an April 16, 1997, article from the *Wall Street Journal,* attached to Aff. of Philip G. Cormier No. 2 as Ex. 3. and Ex. 1, respectively. This thin and collateral "evidence," however, does not persuade the court any more than the evidence discussed above that Malone has committed a "fraud upon the court." (*See* Opp'n of the United States to Mot. to Reopen at 45–48.)

■ On the basis of Malone's "suspect" conduct, MacDonald also seeks access to all items of physical evidence on which Malone conducted laboratory examinations, and other items of physical evidence not examined by Malone, "but which contain unsourced hairs, blood debris and fibers, found in critical locations such as underneath the fingernails of the victims, which may very well contribute toward a demonstration of Dr. MacDonald's factual innocence." (Mem. in Supp. of Mot. to Reopen at 69.) MacDonald seeks access to these exhibits to conduct independent laboratory analyses, including new DNA tests not previously available. However, since the court will not reopen the proceedings on the 1990 petition and, as explained below, has no authority to consider the question of MacDonald's factual innocence based on all of his exculpatory evidence plus his new evidence regarding the possible origin of the saran fibers, there is no basis on which to allow MacDonald discovery. Moreover, the significance of the items other than the saran fibers has been fully litigated in the past, and nothing now presented impugns the validity of the Government's con-

clusions concerning them. (*See* Opp'n of the United States to Mot. to Reopen at 51–52.)

*C. MacDonald's new evidence that saran was used in wigs prior to 1970 is irrelevant to the motion to reopen and cannot now be considered by the court as evidence of MacDonald's innocence.*

■ Finally, MacDonald's attorneys have, since the conclusion of the prior litigation of the 1990 petition, located several individuals in the fiber and wig manufacturing industries who aver that saran fibers were manufactured in tow form, and were used in wigs, prior to February, 1970. MacDonald recounts this newly discovered evidence, not in support of his claims that Malone and the Government committed a fraud upon the court, but to show that some of Malone's claims in the 1991 affidavits were objectively false. But this contention, even if true, is inappropriate to the court's limited area of concern on the motion to reopen—which is simply whether to reopen proceedings on the 1990 petition due to the possibility of fraud. As the Government cogently explains, the court is barred by the Antiterrorism and Effective Death Penalty Act of 1996[6] from considering whether this new evidence, added to the weight of MacDonald's other exculpatory evidence previously Amassed in a trial and two habeas proceedings, finally tips the balance in his favor so as to warrant a new trial. (See Mem. in Supp. of Mot. to Reopen at 52–65 & MacDonald's Reply at 19–38, recounting evidence of MacDonald's innocence collected over the years and arguing that this evidence, in conjunction with what is now known about the saran fibers, demonstrates that he is entitled to a new trial;

6. The Antiterrorism and Effective Death Penalty Act of 1996 amended 28 U.S.C. § 2255 to add the following:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense....

104 Stat. 1220, Title I, § 105. In turn, as amended by the 1996 Act, 28 U.S.C. § 2244 provides in pertinent part as follows:

(3) (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three judge panel of the court of appeals.
110 Stat. 1221, § 106.

Opp'n of the United States to Mot. to Reopen at 33–35.)

In that respect, the motion to reopen is, as the Government argues, akin to a third habeas petition. MacDonald's apparent inability to comprehend this is demonstrated by a footnote explaining the difficulty his defense team has met in investigating, since 1991, whether the two saran fibers could have come from a wig:

> Conducting such an investigation has been extremely difficult, due to limited resources, the passage of time and the difficulty in locating witnesses in an industry which was comprised of many relatively unorganized, marginal businesses, and the fact that much wig manufacturing during the relevant time period took place outside the United States. This being said, at this late date, it is the government which should bear the burden of proving definitively that the long blond Saran hair-like fibers found at the crime scene did not come from a wig, as it is the government which withheld from MacDonald during the pre-trial stages of this case, the exculpatory handwritten laboratory notes which documented Janice Glisson's initial discovery of the long blond Saran fibers.

(Mem. in Supp. of Mot. to Reopen at 32–33 n. 14.) This court has never suggested that the Government had "definitive proof" as to the origin of the saran fibers, and the court in 1991 gave two other good reasons why MacDonald's claim that the Government had "withheld" from him during the pre-trial stages of this case the handwritten lab notes did not entitle him to a new trial. MacDonald histrionically mischaracterizes both the nature and magnitude of the dispute now before the court.

Further, no matter how weak Malone's testimony now, six years later, appears to be, it was the only evidence before the court in 1991. Judge Dupree, in his Order denying the 1990 petition, so noted after reciting the substance of Malone's affidavits. "MacDonald has presented no evidence that blond saran fibers have ever been used in the manufacture of human wigs." *MacDonald,* 778 F.Supp. at 1350. And later, "Without any evidence that saran is used in the production of human wig hair, the presence of blond saran fibers in a hairbrush in the MacDonald home would have done little to corroborate MacDonald's account of an intruder with blond hair or a blond wig." *Id.* at 1354. Following the amendment of 28 U.S.C. § 2255 by the Antiterrorism and Effective Death Penalty Act, the court cannot consider MacDonald's presentation of such evidence now, but must transfer this matter to the Court of Appeals for the Fourth Circuit for consideration of certification of MacDonald's argument as a successive habeas petition pursuant to 28 U.S.C. §§ 2244 and 2255. If that court remands the matter for consideration of the merits, only then could this court address the weight of the evidence.

### D. MacDonald's Motion to File Supplemental Affidavit

■ In his motion for leave to file supplemental affidavit of Philip G. Cormier, MacDonald calls to the attention of the court twelve pages of documents of unknown origin sent anonymously to MacDonald in prison. According to MacDonald, the documents "appear [to be] briefing documents used by the Department of Justice Inspector General's Office or the FBI for the purpose of answering inquiries concerning the April 15, 1997 report issued by Inspector General Michael Bromwich on his FBI Laboratory Investigation." (Mot. for Leave to File Supp. Aff. at 2.) MacDonald specifically directs the court to a paragraph in the documents that reads

> We are aware of one Lab employee (Michael Malone) who may have overstated his conclusions in several cases including the appeal of former Green Beret, JEFFREY MACDONALD. The Task Force is reviewing each of Malone's past cases, including the MacDonald case, and if his scientific analysis/testimony is found flawed, appropriate disclosures will be made.

MacDonald questions how the Government's omission of this "fact" (*Id.*) from its response squares with its position that Malone has committed no wrongdoing.

In response, the Government correctly points out the shortcomings of the documents as "evidence," and submits further affidavits of the Inspector General himself and the Deputy Assistant Attorney General supervis-

ing the Criminal Division Task Force on the FBI Laboratory to the effect that "neither is presently investigating the professional activities of Malone in connection with the Defendant's preceding habeas petition." (Opp'n of the United States to Mot. to File Supp. Aff. at 2–3.) Nevertheless, as the court has carefully read and considered every page filed herein, MacDonald's motion for leave to file supplemental affidavit is ALLOWED, and the Clerk is DIRECTED to file that document. The Supplemental Affidavit and the twelve pages attached do not impact the court's disposition of the motion to reopen, for the reasons stated above.

### V. Conclusion

In conclusion, MacDonald has not convinced the court that Michael Malone's testimony was material to the disposition of MacDonald's 1990 habeas petition, or that Malone or any other agent of the Government committed any wrongdoing in defending against the 1990 petition. Thus, MacDonald's Motion to Reopen 28 U.S.C. § 2255 Proceedings and for Discovery is DENIED. His claim that newly gathered evidence that saran fibers were in fact used in the manufacture of human wigs prior to 1970, added to the weight of previously amassed exculpatory evidence, demonstrates his factual innocence and that he is entitled to a new trial, is TRANSFERRED to the United States Court of Appeals for the Fourth Circuit. Thus, the Government's Motion to Dismiss 28 U.S.C. § 2255 Petition for Lack of Jurisdiction and Suggestion, in the Alternative, to Transfer to the Court of Appeals, is DENIED IN PART and ALLOWED IN PART. Finally, MacDonald's Motion for Leave to File Supplemental Affidavit is ALLOWED.

SO ORDERED.

