## ALCORTA *v.* TEXAS.

No. 139.   Argued October 23, 1957.—Decided November 12, 1957.

*Fred A. Semaan* and *Raul Villarreal* argued the cause, and *Mr. Semaan* filed a brief, for petitioner.

*Roy R. Barrera* and *Hubert W. Green, Jr.* argued the cause for respondent.   With them on the brief was *Will Wilson,* Attorney General of Texas.

PER CURIAM.

Petitioner, Alvaro Alcorta, was indicted for murder in a Texas state court for stabbing his wife to death.   Vernon's Tex. Pen. Code, 1948, Art. 1256.   He admitted the killing but claimed it occurred in a fit of passion when

he discovered his wife, whom he had already suspected of marital infidelity, kissing one Castilleja late at night in a parked car. Petitioner relied on Texas statutes which treat killing under the influence of a "sudden passion arising from an adequate cause . . . as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection" as murder without malice punishable by a maximum sentence of five years' imprisonment. Vernon's Tex. Pen. Code, 1948, Arts. 1257a, 1257b, 1257c. The jury, however, found him guilty of murder with malice and, acting under broad statutory authority to determine the extent of punishment, sentenced him to death. The judgment and sentence were affirmed by the Texas Court of Criminal Appeals. 165 Tex. Cr. R. ——, 294 S. W. 2d 112.

Castilleja, the only eye witness to the killing, testified for the State at petitioner's trial. In response to inquiries by the prosecutor about his relationship with the petitioner's wife, Castilleja said that he had simply driven her home from work a couple of times, and in substance testified that his relationship with her had been nothing more than a casual friendship. He stated that he had given her a ride on the night she was killed and was parked in front of her home with his car lights out at two o'clock in the morning because of engine trouble. The prosecutor then asked what had transpired between Castilleja and petitioner's wife in the parked car:

"Q. Did you have a conversation with Herlinda?

"A. Yes; she opened the door. She was going to get off [sic] and, then, she told me to tell my sister to come and pick her up in the morning so she could go to church.

"Q. To tell your sister, Delfina Cabrera, to come pick her up in the morning so she could go to church?

"A. Yes."

At the conclusion of Castilleja's testimony the following colloquy took place between him and the prosecutor:

"Q. Natividad [Castilleja], were you in love with Herlinda?

"A. No.

"Q. Was she in love with you?

"A. No.

"Q. Had you ever talked about love?

"A. No.

"Q. Had you ever had any dates with her other than to take her home?

"A. No. Well, just when I brought her from there.

"Q. Just when you brought her from work?

"A. Yes."

All this testimony was quite plainly inconsistent with petitioner's claim that he had come upon his wife kissing Castilleja in the parked car.

Some time after petitioner's conviction had been affirmed Castilleja issued a sworn statement in which he declared that he had given false testimony at the trial. Relying on this statement petitioner asked the trial court to issue a writ of habeas corpus. He contended that he had been denied a fair trial in violation of State and Federal Constitutions because Castilleja had testified falsely, with the knowledge of the prosecutor, that his relationship with petitioner's wife had been only "that of a friend and neighbor, and that he had had no 'dates,' nor other relations with her, when in truth and in fact the witness had been her lover and paramour, and had had sexual intercourse with her on many occasions . . . ." Petitioner further alleged that he had no knowledge of this illicit intercourse at the time of his trial.

A hearing was held on the petition for habeas corpus. Castilleja was called as a witness. He confessed having sexual intercourse with petitioner's wife on five or six

occasions within a relatively brief period before her death. He testified that he had informed the prosecutor of this before trial and the prosecutor had told him he should not volunteer any information about such intercourse but if specifically asked about it to answer truthfully. The prosecutor took the stand and admitted that these statements were true. He conceded that he had not told petitioner about Castilleja's illicit intercourse with his wife. He also admitted that he had not included this information in a written statement taken from Castilleja prior to the trial but instead had noted it in a separate record. At the conclusion of the hearing the trial judge denied the petition for habeas corpus. Petitioner then applied to the Texas Court of Criminal Appeals for a writ of habeas corpus but that court, acting on the record made at the hearing before the trial court, also refused to issue the writ. We granted certiorari, 353 U. S. 972. Texas concedes that petitioner has exhausted all remedies available to him under state law.

Under the general principles laid down by this Court in *Mooney* v. *Holohan,* 294 U. S. 103, and *Pyle* v. *Kansas,* 317 U. S. 213, petitioner was not accorded due process of law. It cannot seriously be disputed that Castilleja's testimony, taken as a whole, gave the jury the false impression that his relationship with petitioner's wife was nothing more than that of casual friendship. This testimony was elicited by the prosecutor who knew of the illicit intercourse between Castilleja and petitioner's wife. Undoubtedly Castilleja's testimony was seriously prejudicial to petitioner. It tended squarely to refute his claim that he had adequate cause for a surge of "sudden passion" in which he killed his wife. If Castilleja's relationship with petitioner's wife had been truthfully portrayed to the jury, it would have, apart from impeaching his credibility, tended to corroborate petitioner's contention that he had found his wife embrac-

ing Castilleja. If petitioner's defense had been accepted by the jury, as it might well have been if Castilleja had not been allowed to testify falsely, to the knowledge of the prosecutor, his offense would have been reduced to "murder without malice" precluding the death penalty now imposed upon him.

The judgment is reversed and the cause is remanded to the Court of Criminal Appeals of the State of Texas for further proceedings not inconsistent with this opinion.

*It is so ordered.*