

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,464

### EX PARTE NEAL HAMPTON ROBBINS, Appellant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## IN CAUSE NO. 98-06-00750-CR FROM THE
## 410TH JUDICIAL DISTRICT COURT OF MONTGOMERY COUNTY

**ALCALA, J., filed a dissenting opinion.**

### O P I N I O N

I respectfully dissent. I conclude that Neal Hampton Robbins is entitled to relief on his application for a writ of habeas corpus on the ground that he was denied due process of law by the State's use of false testimony to obtain his conviction.[1]

---

[1] Although I agree with many of the assessments in the Honorable Judge Cochran's dissenting opinion, I do not join that opinion because the change in Dr. Moore's testimony is not due to new scientific principles but is instead, according to her, due to her having more experience as a medical examiner, and according to the trial court's findings, due to her trial testimony being the result of prosecutorial bias. None of the medical examiners who testified for the application for writ of habeas corpus describe their testimony as stemming from new scientific principles. *Compare Ex parte Henderson*, 246 S.W.3d 690, 691 (Tex. Crim. App. 2007) ("That material [affidavits and reports of several scientists] indicates that what is called the biomedical analysis of infant head trauma (an area of scientific research that was beginning to develop in 1995 when applicant was tried

## I.    False Testimony

The Due Process Clause of the Fourteenth Amendment is violated when the State knowingly or unknowingly uses perjured testimony to obtain a conviction.  *Ex parte Chabot*, 300 S.W.3d 768, 770-71 (Tex. Crim. App. 2009); *Ex parte Napper*, 322 S.W.3d 202, 242 (Tex. Crim. App. 2010) ("*Chabot* simply stands for the proposition that the preponderance of the evidence standard is appropriate for the unknowing use of perjured testimony that the habeas applicant had no prior opportunity to discover.").  The term "perjury" in this context requires proof that the testimony "gives the trier of fact a false impression," but it does not require proof of the elements of "perjury" as that term is defined in the penal code.  *See Ex parte Ghahremani*, 332 S.W.3d 470, 477-78 (Tex. Crim. App. 2011); *see also Napper*, 322 S.W.3d at 242  (citing *Estrada v. State*, 313 S.W.3d 274, 287 (Tex. Crim. App. 2010) ("[W]e held on direct appeal that false testimony that was not perjury resulted in a due process violation when there was 'a fair probability that [the] death sentence was based upon . . . incorrect testimony.'").

---

and convicted) now shows that the type of head injuries that Brandon Baugh suffered could have been caused by an accidental short fall onto concrete.").  The testimony Dr. Moore gave at the writ hearing concerning her uncertainty about cause and manner of death is very similar to the testimony given by Dr. Robert Bux, the medical examiner testifying for Robbins at the trial, and her changed testimony is not due to advances in science.

The trial court found that Dr. Moore's trial testimony was false. The trial court's findings state that "Dr. Moore's trial opinions were not true. They were based on false pretenses of competence, objectivity, and underlying pathological reasoning, and were not given in good faith." The trial court characterized her testimony as "expert fiction calculated to attain a criminal conviction." The record supports the trial court's characterization concerning the falseness of the testimony.

The record shows that, as the sole witness establishing cause and manner of death for the State at Robbins's trial, Dr. Moore testified that, based on her scientific opinion beyond a reasonable doubt, the cause of Tristen Rivet's death was asphyxia due to compression of the chest and abdomen, and the manner of death was homicide. In her evidence concerning this application for a writ of habeas corpus, she now concludes that the cause of death was, beyond a reasonable doubt, *not* compression asphyxia, and undeterminable as to homicide, asphyxial or otherwise. Dr. Moore's subsequent testimony is a complete refutation of her trial testimony because, although her trial testimony stated that, beyond a reasonable doubt, the cause of death was compression asphyxia and the manner of death was homicide, she now says that the cause and manner of death are, beyond a reasonable doubt, "undeterminable." Both positions cannot be true. This wholesale refutation of her previously professed scientific certainty nullifies the veracity of the conclusion itself.

I recognize that, as noted by the majority opinion, the record shows that neither Dr. Moore nor any of the other testifying experts can "exclude" asphyxial homicide as a possible cause of death or "rul[e] out other reasonable hypotheses by which Tristen died." In other words, because Dr. Moore presently acknowledges that the cause of Tristen's death could possibly have been homicide and possibly by asphyxiation, the majority opinion determines that her new testimony does not show that her earlier testimony is false. But Dr. Moore is merely acknowledging the possibility that this cause and manner of death could be true because her opinion is, beyond a reasonable doubt, that she does not know the cause and manner of death. The fact that a witness acknowledges a mere possibility of an alternative hypothesis is not a failsafe escape for due process violations.

The Supreme Court has disallowed this technical splicing of the truth to avoid due process violations. In evaluating whether evidence is false, it has focused on whether the testimony, taken as a whole, gives the jury a false impression. *See Alcorta v. Texas*, 355 U.S. 28, 31 (1957) (holding Alcorta's due process rights violated when the State, although not soliciting false evidence, allowed it to go uncorrected when it appeared, and stating, "It cannot seriously be disputed that [the witness's] testimony, taken as a whole, gave the jury the false impression that his relationship with petitioner's wife was nothing more than that of casual friendship.").

Furthermore, the Supreme Court has determined that a statement is false even when the witness has acknowledged the existence of a similar situation. *See Napue v. Illinois*, 360 U.S. 264, 270 (1959) (holding Napue's due process rights violated because witness's testimony that public defender had offered to help him if he testified for the State did not turn "what was otherwise a tainted trial into a fair one" when true evidence showed that prosecutor had promised "consideration" if witness testified at Napue's trial). These Supreme Court decisions illustrate that a due process violation cannot be excused by the mere acknowledgment that it is possible that the trial testimony could have been true. Dr. Moore's new testimony, when taken as a whole, is that, beyond a reasonable doubt, the manner and cause of death is undeterminable, and it is that testimony that was improperly precluded from Robbins's trial.[2]

Perhaps Dr. Moore's testimony could not be called "false" if, for example, she consistently determined, beyond a reasonable doubt, that the manner and cause of

---

[2]   *Ex parte Chavez*, a case on which the majority opinion relies, does not support the majority's position. No. AP-76,291, 2010 Tex. Crim. App. Unpub. LEXIS 686 (Tex. Crim. App. Nov. 17, 2010) (not designated for publication). In the trial in *Chavez*, the State's expert testified that she could not identify the recovered hair as belonging to Chavez and confirmed that it was "quite possible that folks of the same race would share characteristics on their [hair] samples." *Id*. at *12-13. Later, DNA results confirmed that the hair did not belong to the defendant. *Id*. at *14. The DNA evidence merely diminished the probative value of the hair comparison testimony at trial. It did not disprove the expert's testimony that the hairs shared physical characteristics. *Id*. at *20. Taking the hair expert's testimony as a whole, the DNA evidence did not show it was untrue, and, therefore, *Chavez*'s holding is unpersuasive in this context, in which the same witness is giving two contradictory scientific opinions concerning the exact same subject.

death could be established with scientific certainty and that the manner of death was homicide, but was uncertain whether the cause of death was asphyxia by some means other than compression. *See Berger v. United States*, 295 U.S. 78, 82 (1935) ("The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused."). But Dr. Moore's changed testimony is not merely a variance in proof. Her present position acknowledges that the cause and manner of death could possibly be natural causes or homicide and that both are equally likely. An acknowledgment that trial testimony could possibly be correct because no one can determine the cause and manner of death with scientific certainty is vastly different from evidence that the cause and manner of death are proven beyond a reasonable doubt with scientific certainty. I, therefore, agree with the trial court's assessment that the record shows that Dr. Moore's testimony was false.

## II.    Harm Analysis

Having determined that Dr. Moore's false testimony constituted "perjury" in the context of this due process analysis, I conclude, as did the trial court, that Robbins has shown by a preponderance of the evidence that the use of this false evidence contributed to his conviction. It is undisputed that Robbins had no opportunity to discover Dr. Moore's bias and improper intentions prior to her recantation, and,

therefore, resolution of this case rests on whether he met his burden to show harm.

Regardless whether the State's use of the perjury was knowing[3] or unknowing, the

standard of harm requires that the applicant prove by a preponderance of the evidence

that the error contributed to his conviction or punishment. *See Ex parte Fierro*, 934

S.W.2d 370, 374-75 (Tex. Crim. App. 1996) ("[W]e hold that the knowing use of

perjured testimony is trial error, subject to the harmless error standard applicable on

habeas corpus," and "we hold that the applicant has the burden to prove by a

preponderance of the evidence that the error contributed to his conviction or

punishment."); *Chabot*, 300 S.W.3d at 771 ("Although the present case involves

unknowing, rather than knowing, use of testimony, we see no reason for subjecting

the two types of error to different standards of harm."); *Napper*, 322 S.W.3d at 244

---

[3] Inconsistently with this harm requirement, our court has absolved an applicant from having to prove harm, as follows: "When a habeas applicant has shown that the State knowingly used false, material testimony, and the applicant was unable to raise this claim at the trial or on appeal, we will grant relief from the judgment that was obtained by that use." *Ex parte Ghahremani*, 332 S.W.3d 470, 483 (Tex. Crim. App. 2011); *see also Ex parte Carmona*, 185 S.W.3d 492, 496 (Tex. Crim. App. 2006) (due process violated and habeas relief granted where witnesses' material testimony recanted "or their bias and lies . . . exposed."). "[W]e treat perjured testimony as knowingly used if the witness was a member of the 'prosecution team.'" *Ex parte Napper*, 322 S.W.3d 202, 243 (Tex. Crim. App. 2010). Knowledge possessed by a member of the "prosecution team" must be imputed to the prosecutor actually trying the case. *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993); *Ex parte Brandley*, 781 S.W.2d 886, 892 n.7 (Tex. Crim. App. 1989). Everyone here agrees that the State's prosecutors did not, themselves, knowingly sponsor false testimony. Some evidence suggests that Dr. Moore was a member of the "prosecution team" in that she was the assistant medical examiner employed by the county and the State's sole witness to establish criminal cause and manner of death. Because Robbins is able to show harm by a preponderance of the evidence, I need not determine whether Dr. Moore was a member of the "prosecution team" and do not address whether Robbins should be absolved of the burden to prove harm.

("For habeas corpus proceedings involving the unknowing use of perjured testimony, the harm standard would be preponderance of the evidence").

The record supports the trial court's findings that Dr. Moore's testimony was "critical" to resolution of the case and that "her opinions were the sole bases of the State's case as to cause and manner of death, without which the State would not have obtained a conviction." We must defer to these findings, as they are amply supported by the record. *See Ghahremani*, 332 S.W.3d at 478 (requiring deference to findings supported by record). Alone, Dr. Moore conducted the autopsy of Tristen's body and was thus the sole testifying witness with personal knowledge of the medical findings. And her trial testimony alone professes that the cause of Tristen's death was, beyond a reasonable doubt, homicide (asphyxial or otherwise). Absent this trial testimony, there is no evidence of the cause of death—that is, no evidence that a crime occurred—because Robbins's defense expert medical examiner, Dr. Robert Bux, testified that Tristen's death could have been from natural causes. Dr. Moore now agrees with Dr. Bux's medical assessment. Without Dr. Moore's trial testimony, the jury would have been left solely with the evidence from Dr. Bux, who stated that the cause and manner of Tristen's death are undeterminable.

Mere consideration of whether the jury would have convicted based solely on the remaining circumstantial evidence absent Dr. Moore's testimony does not

sufficiently measure her testimony's materiality. *See United States v. Johnson,* 149 F.2d 31 (7th Cir. 1945) ("'There is no way for a court to determine that the perjured testimony did not have controlling weight with the jury, and, notwithstanding the perjured testimony was contradicted at the trial, a new light is thrown on it by the admission that it was false; so that, on a new trial, there would be a strong circumstance in favor of the losing party that did not exist and therefore could not have been shown, at the time of the original trial.'") (quoting *Martin v. United States*, 17 F.2d 973, 976 (5th Cir. 1927)). First, Dr. Moore's subsequent testimony actually corroborated defense witness Bux's testimony that the cause of death was undeterminable. *See Alcorta*, 355 U.S. at 31-32 (in reversing judgment, stating, "If Castilleja's relationship with petitioner's wife had been truthfully portrayed to the jury, it would have, apart from impeaching his credibility, tended to corroborate petitioner's contention that he had found his wife embracing Castilleja."). Second, her testimony that was introduced at trial affirmatively misled jurors to reach a damning conclusion on the most crucial issue that, but for that testimony, they likely would not have reached. *See id.* at 32 (determining that applicant's due process rights were violated by misleading testimony denying sexual relationship between deceased and witness that was pertinent to proof of sudden passion arising from an adequate

cause). Dr. Moore's trial testimony thus prevented "a trial that could in any real sense be termed fair." *See Napue*, 360 U.S. at 270.[4]

### III. Conclusion

I conclude that Robbins's due process rights were violated by the false, material trial testimony by the State's sole medical expert establishing cause and manner of death. In accordance with the recommendation by the convicting court to grant relief from the judgment, I would remand for a new trial.

Filed: June 29, 2011

Publish

---

[4] Dr. Moore acknowledges that she had been cited for improper work and evaluated as being biased in favor of the prosecution. Her supervisor, Dr. Joye Carter, had questioned her impartiality and suggested that she had not successfully transitioned into the neutral position of a forensic pathologist. Furthermore, Dr. Moore had provided similar recantations in other cases as well. This evidence seems to support the trial court's findings that the false trial testimony by Dr. Moore was not given in good faith. However, I need not reach the issue of whether Dr. Moore acted in bad faith, because Robbins has met the burden of proof to show by a preponderance of the evidence that he was harmed by Dr. Moore's false testimony. *See Napper*, 322 S.W.3d at 243-44.