FILED IN
COURT OF CRIMINAL APPEALS

July 2, 2015

ABEL ACOSTA, CLERK

WR-76,781-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/2/2015 12:02:46 PM
Accepted 7/2/2015 1:14:50 PM
ABEL ACOSTA
CLERK

## NO. WR-76,781-01

# IN THE COURT OF CRIMINAL APPEALS
# AUSTIN, TEXAS

---

## EX PARTE ROBERTO GONZALEZ DE LA CRUZ, Applicant

---

## APPLICANT'S MOTION FOR REHEARING

---

## CAUSE NO. 835305
## 174TH DISTRICT COURT
## FROM HARRIS COUNTY, TEXAS

---

**STANLEY G. SCHNEIDER**
**SCHNEIDER & McKINNEY, P.C.**
**TEXAS BAR NO. 17790500**
**44O LOUISIANA, SUITE 800**
**HOUSTON, TEXAS 77002**
**OFFICE: (713) 951-9994**
**FAX: (713) 224-6008**
**EMAIL: stans3112@aol.com**

**ATTORNEY FOR APPLICANT**
**ROBERTO DE LA CRUZ**

## IDENTIFICATION OF PARTIES

Roberto Gonzalez De La Cruz. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Applicant

      c/o Stanley G. Schneider
      Schneider & McKinney, P.C.
      440 Louisiana, Suite 800
      Houston, Texas 77002

The Hon. Devon Anderson. . . . . . . . . . . . . . . . . . . . . . . . . Attorney for the State
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Trial Counsel for the State

      Harris County District Attorney's Office
      1201 Franklin, 6th floor
      Houston, Texas 77002

Cruz Cervantes. . . . . . . . . . . . . . . . . . . . . . . . . . . Counsel for Applicant at trial
Lorraine Cervantez. . . . . . . . . . . . . . . . . . . . . . . . Counsel for Applicant at trial

Stanley G. Schneider. . . . . . . . . . . . . . . . . . . . . Counsel for Appellant on appeal

      Schneider & McKinney, P.C.
      440 Louisiana, Suite 800
      Houston, Texas 77002

Honorable Doug Shaver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Trial Judge

i

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

INDEX OF AUTHORITIES
        Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii
        Statutes and Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I. PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. REASON FOR REHEARING.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ARGUMENT IN SUPPORT OF REHEARING. . . . . . . . . . . . . . . . . . . . . 1

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

## Cases

*Alcorta v. Texas*, 355 U.S. 28 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 9

*Burkhalter v. State*, 493 S.W.2d 214 (Tex. Cr. App. 1973). . . . . . . . . . . . . . . . . 10

*Estrada v. State*, 313 S.W. 3d 274 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . 14

*Ex parte Ghahremani*, 332 S.W. 3d 470 (Tex. Crim. App. 2011). . . . . . . . . . . 9, 14

*Ex parte Chabot,* 300 S.W. 3d 768 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . 9

*Ex parte Chavez*, 371 S.W.3d 200 (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . 8

*Mooney v. Holohan*, 294 U.S. 103 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Napue v. Illinois*, 360 U.S. 264 (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . 9

## Statutes and Rules

TEX. CODE CRIM. PROC. art. 11.07. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. R. APP. P. 79.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**TO THE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

**COMES NOW ROBERTO DE LA CRUZ,** Applicant herein, by and through his attorney, **STANLEY G. SCHNEIDER,** and pursuant to TEX. R. APP. P. 79.1, files Motion for Rehearing and in support thereof, would show the Court as follows:

### I. Procedural History

This Court's opinion was issued on June 17, 2015. This Motion for Rehearing is due on July 2, 2015.

### II. Reason For Rehearing

By its opinion, this Court is sustaining a conviction based on testimony that is false. New scientific evidence that proves the falsity of every witness who testified at Applicant's trial. Due process and the concept of fundamental fairness demands that this Court reconsider its opinion and remand this cause for a new trial.

### III. Argument in Support of Rehearing

The lie embraced by the State is that Marcos Torres saw Roberto DelaCruz shoot Jorge Pena in front of Porras' Bakery and then helped transport Jorge Pena's body to a nature reserve fifteen minutes from the bakery. The State argued to the jury that the medical examiner was incompetent to interpret the scene and that the police were qualified to interpret evidence.

Today, the State has now stipulated that the competent scientific evidence

1

confirmed that Jorge Pena was shot where his body was recovered. The State agreed that Jorge Pena was shot twice in the head at the nature reserve yet still argue that a conviction must be upheld. The State argues that the testimony from Dr. Wolff does not prove that Marcos Torres did not see Roberto DeLaCruz shoot Jorge Pena.

All of the testimony from all of the state's witnesses  Marcos Torres, police witnesses  Brian Naismith, Daniel Woolcock, Pamela Erikson, Raul Budd and Assistant Medical Examiner Paul Shrode were false in some fashion.

Without consideration of the new scientific evidence, the trial judge was surprised by the verdict.

> Since I heard the case — I have no idea what else occurred during the course of the trial, the conversations. I can tell you this: **As far as Marcos Torres is concerned, the State's main and only witness that I remember, I was surprised myself that the jury believed him and found the person guilty. He was an unbelievable witness**, in my opinion. The jury believed him.

(8 RR 51). (emphasis added)

Applicant filed an application for writ of habeas corpus pursuant to TEX. CODE CRIM. PROC. art. 11.07 wherein he raised the following issues:

(1)    Applicant was denied effective assistance of counsel for the following reasons:

A.    Trial counsel failed to object to the opinions and qualifications of Baytown Police Officers Daniel Woolcock, Pamela Erickson and

2

Raul Budd concerning their analysis of the crime scene and blood spatter evidence;

B.   Trial counsel failed to cross examine Daniel Woolcock concerning his investigation of the scene at Porras' Bakery on November 21, 1998 and his analysis of blood stain evidence;

C.   Trial counsel failed to cross examine Pamela Erickson concerning the facts observed by her that supported the defense trial theory that Jorge Pena had been shot at the location where his body was found;

D.   Trial counsel failed to impeach Raul Ramirez concerning the location of the store that Jorge Pena bought beer on the night that he disappeared;

E.   Trial counsel failed to cross examine Marco Torres regarding the reason for his failure to call the police after witnessing the alleged shooting of Jorge Pena; the distance between Applicant and Jorge Pena at the time of the shooting; the different descriptions of the vehicle that Applicant was driving on November 19 -20, 1998;

F.   Trial counsel failed to cross examine police concerning the date Applicant purchased a white Ford LTD, which was described as the vehicle being driven by Applicant when Jorge Pena was shot;

G.   Trial counsel failed to cross examine police concerning the scene of Porras' on November 19 and 20, 1998, and the lack of evidence of a shooting at the scene and the investigation of outside.

H.   Trial counsel failed to cross examine Diana Pena about her relationship with Jorge Pena and what she was doing on November 19, 1998, prior to the shooting and his leaving their house with her brother Raul Ramirez;

3

I.    Trial counsel failed to present expert testimony concerning the interpretation of the scene evidence and failed to present testimony from a crime scene reconstruction or blood spatter expert concerning the positioning of Jorge Pena was shot where his body was discovered;

J.    Trial counsel failed to make a hearsay objection to the testimony by Officer Budd concerning his interview of Juan DelaGarza and after interviewing DelaGarza and interviewing Marcos Torres.

K.    Trial counsel failed to object to testimony of Officer Budd concerning the contents of the statement made by a confidential source in September of 1999, concerning the shooting of Jorge Pena.

The habeas court convened a hearing to consider the allegations of newly discovered evidence that was previously unavailable and material to the defense and that Applicant was denied due process by the State's presentation of false evidence. The habeas court specifically found that the testimony of each of the State's was false. The habeas court found that the amended autopsy report constituted newly discovered evidence that would have in all probability resulted in a different verdict because of the credible and unchallenged testimony of Dr. Dwayne Wolfe that Jorge Pena had been shot in the head twice and not once as testified to by Assistant Medical Examiner Dr. Paul Shrode, a witness called by the State. Dr. Wolfe also testified that the second shot to the head of Jorge Pena occurred within a minute of the first shot to Jorge Pena's head. Dr. Wolfe testified that the second shot definitely occurred at

4

the location where Jorge Pena's body was found rather being shot at a different location once and his body transported across Baytown. The trial court further found that the State theory at trial had no viable or competent evidentiary because the testimony of Marcos Torres was not supported by any credible forensic evidence.

The habeas court also did not make recommendations pertaining to Applicant's claim that he was denied effective assistance of counsel.

The habeas court found that Marcos Torres, a paid informant for the Baytown Police Department, (4 RR 70), testified that on the night of November 19-20, 1998, he was with Applicant and Applicant's son-in-law, Juan DeLaGarza. According to the record, Torres stated that they were drinking, smoking dope, riding around Baytown. Applicant was driving. The habeas court found that Torres told the jury that Applicant stopped his vehicle in front of Porras Bakery and went to talk to some guys. Neither DeLaGarza nor Torres got out of the car. The habeas court found that Torres said that Applicant got something from the car and walked up to Pena, who was standing with his hands in his pockets and shot him. Torres stated that he was not expecting Applicant to shoot anyone. The habeas court further found that Torres stated that Applicant told Torres to put Pena in the car. Torres stated that he picked up Pena and put him in the back seat of the car by lifting him up by placing his hands under his arms and dragging him to the vehicle. Even though he picked up Pena by

5

hugging him under his arms, Torres stated that he did not see where Pena was bleeding. Torres stated that Applicant instructed him to drive Applicant's vehicle. Applicant allegedly directed Torres to drive to some park type area on Bayway Drive. Somehow Pena's overalls came off. The habeas court found that the record reflects that Torres stated that when they got to a deserted area, Applicant told Torres to stop the vehicle and Applicant pulled Pena from the backseat and left him on the ground. Torres then threw Pena's overalls on top of him. The record also reflects that Torres also stated that he did not go to the police after the shooting because he was afraid of Applicant. Torres stated that his fear of Applicant was based on the fact that prior to the shooting of Pena, Applicant shot two guys and after the shooting was going back and forth to Mexico.[1] The record reflects that Torres stated that he did not voluntarily approach the police but was taken to the Baytown Police Department in September 1999 to give a statement. The record reflects that Torres stated that while giving his original statement Baytown Police Officer Budded gave him hints about what to say in his statement. (4 RR 101).

The habeas court found that the State, in its closing argument attempted to discredit the opinions of Dr. Shrode and relied totally on the believability of Torres

---

[1] Baytown Police report 1999-9574, March 5, 1999, involves the shooting described by Torres which occurred two months after Pena's body was discovered.

6

and the police officers:

It was Dr. Shrode's testimony, he said the bullet could have killed him instantly. *He didn't say he would bleed instantly. It takes time. It's going to come out of the area where the injury occurred. You can look at the photographs. It came out of Mr. Pena's ear and it came out of the injury, which is why it all pooled right by his head.*

You heard testimony from the officers at the scene about the decline from his head and why it flowed downhill. It wasn't a splatter, it was a pooling, a river of blood that flowed from his head. *Dr. Shrode wasn't at the scene, he wasn't there, he didn't go out and look at the body. Sometimes medical examiners do, but they didn't in this case.*

The officers were the ones out there at the scene, examining the scene, taking a look at it to determine what it is they believed happened.

What other physical evidence is there to show you that Marcos Torres is believable and credible and what he tells you is the truth? When you -- I know thought numerous times -- I'm not going to put this picture up. You can take it back there with you and look at all the photographs.

Remember, the T-shirt and shorts Mr. Pena was wearing. There is a trail or blood going down his shirt and onto his shorts. Detectives told you they felt that was consistent with him having been propped up some point. Very well could have happened in the ride from the car -- in the car from Porras to the location where they dumped his body out in the park.

There is no way when he's on an incline and all the blood is going this way, that any blood would down this way. It's consistent. Juan Pena's body is giving you the evidence for you to believe that this man committed the offense of murder. That his blood trailed down as he was being transported from Porras to the location in the park.

You can take it back there and look at it. You can refresh your memory with what the officers told you. All the detectives that were up there, they all told you the same thing. That's what they saw, that's what they believed. Every one of those detectives told you when they're out at the scene, they never, for one minute, thought this offense occurred out by the water.

The way the body is dumped -- when you look at that photograph,

7

it's kind of like when the officers told you they saw the body, what was your initial impression? What did you think? When you look at the photograph, it looks like a body has been touched. It doesn't look like someone who has just been shot. Those arms are out, falls backwards, the legs in odd angles. His right leg is twisted under. His arms are underneath him. A person who's just been shot, you look at it. I don't think you're going to think a person can lay like that.

...Look at the photographs. All I'm asking you is to use your common sense. *The physical evidence corroborates the statement of Marcos Torres*.

(5 RR 96-98).

Given Supreme Court precedent, it is inconceivable that this Court determined that the revelation that competent scientific evidence proved that Jorge Pena was murdered at the nature reserve and not at Porras' Bakery was not material. The Supreme Court has long held that the presentation of false evidence at trial violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a Petitioner must establish that: 1) the testimony was actually false; 2) the prosecution knew it was false; and 3) that it was material. *Napue v. Illinois*, 360 U.S. at 271. The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue,* 360 U.S. at 271.

8

This Court's opinion conflicts with its own analysis in *Ex parte Chavez*, 371 S.W.3d 200 (Tex. Crim. App. 2012) where this Court stated that the standard for materiality of false testimony is whether there is a "reasonable likelihood that the false testimony affected the applicant's" conviction or sentence. *See also Ex parte Chabot,* 300 S.W. 3d 768, 772 (Tex. Crim. App. 2009); *Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000). The Fifth Circuit has stated that evidence is false if it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict. *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

The Supreme Court has stated that testimony is false when it creates a false impression or the witness omitted or glossed over pertinent facts. For example, in *Alcorta v. Texas*, 355 U.S. 28 (1957), the defendant claimed that he murdered his wife as a result of sudden passion when he came home to find a man kissing her. The man, the only eye-witness to the murder, testified that his relationship with the wife was nothing more than a casual friendship in which he drove her home from work a few times. The Supreme Court held that such testimony was false; it created a false impression of the facts because, in actuality, the man was the wife's "lover and paramour," and the two had sexual intercourse on many occasions. *Id.* at 30-32. Similarly, in *Ex parte Ghahremani*, 332 S.W.3d 470 (Tex. Crim. App. 2011), the

9

victim's mother testified that after the victim was assaulted, the victim "gained weight, required therapy, and 'wasn't the same socially,'" but the mother denied that anything else was different about the victim during the time between the assault and the victim's intensive therapy. *Id.* at 478-79. However, the habeas record showed that the victim sold drugs and was initiated into a gang during that time period. This Court concluded that the witness's testimony created a misleading impression of the facts because of the gravity of the events omitted, the significant period of time that was not addressed, and the fact that the testimony attributed all of the psychological treatment to the defendant's actions. *Id.* at 479; *see also Burkhalter v. State*, 493 S.W.2d 214, 218 (Tex. Cr. App. 1973), holding that, although the witness's statement was not technically false, it "conveyed an impression to the jury which the State knew to be false" when the witness's lawyer had an understanding with the State that the witness would not be prosecuted if he testified, but the witness testified he did not have an agreement with the State).

The rules are simple. A new trial must be granted if the false testimony affected the outcome of the proceedings. And if the State used false evidence to support a conviction, the conviction must be set aside.

In the instant case, the Applicant was convicted of murder and sentence to 99 years in prison. Justice demands that the Court must approve the recommendations

10

of the trial court and grant Applicant a new trial. At trial, the only testimony that inculpated Applicant was Marcos Torres. The habeas court found that his testimony was false and that there was no other testimony that linked Applicant to either Jorge Pena or the shooting except the testimony of Marcos Torres. The State, notwithstanding the stipulation entered as part of this habeas proceedings, still contests the trial court's recommendation that Applicant be granted a new trial

Applicant's conviction rests solely on the testimony of Marcos Torres, a paid informant for the Baytown Police Department. The evidence presented in the habeas court proves that there exists no competent or reliable evidence from any source that Marcos Torres' testimony is any way true. There exists **no** evidence that Jorge Pena and Applicant knew each other or even met on the night that Jorge Pena was shot except for the testimony of Marcos Torres.

Essential to the habeas court's recommendation are the results of the amended autopsy report that clearly showed that Jorge Pena was shot twice and not once and that he was shot where his body was discovered. The habeas court found that in all probability the amended autopsy report establishes without a doubt that there were two shots to Jorge Pena's head, the second shot to the head of Jorge Pena occurred in close proximity in time to the first shot to Jorge Pena's head and the second shot definitely occurred at the location where Jorge Pena's body was found. Thus, there

11

exists no credible forensic evidence that supports the false allegations by Marcos Torres.

Applicant believes that this Court must view the trial record especially the testimony of Marcos Torres within the prism of the State's stipulation of evidence entered in this proceedings wherein the State agreed that the credible forensic evidence presented at trial and by the report of forensic reconstruction expert Tom Bevel, the amended autopsy report of Dr. Dwayne Wolfe, Deputy Chief Medical Examiner of Harris County, Texas is more consistent with Jorge Pena being shot at the location where his body was found and not consistent with the State's theory at trial that he was shot at one location, transported by car for approximately 10 minutes and then his body "dumped" at another location. The State also stipulated that the credible forensic evidence demonstrates that the complainant had two gunshot wounds rather than a single gunshot wound. One of the shots entered the face and one entered the back of the head. And the wound described by Dr. Shrode at the trial an a exit wound is in fact a second entrance wound.

Dr. Dwayne Wolfe, Deputy Chief Medical Examiner for Harris County, Texas testified during the habeas proceedings that the autopsy of Jorge Pena was examined at the request of the State and it was discovered that there were two gunshot entrance wounds in the head of Juan Pena and not one. The official autopsy report was

12

changed or modified to reflect that two gunshot entrance wounds in the complainant's head. Because of the significance of the second wound to Jorge Pena's head in relationship to the facts of the case, the trial court found that the contents of the amended autopsy report constituted newly discovered evidence.

In addition to describing the second wound and the path of the bullet, Dr. Wolfe explained that the significance of the relationship between the trail of blood on the ground and the blood stain on the complainant's shirt. He stated that the stains are consistent with Mr. Pena having been shot right at the location where he was found and leaning forward as the blood drips down and trails across the ground. The stains give no indication that he was dragged. Dr. Wolfe stated that there is no indication that the complainant was transported from one location to the scene where he was discovered. Dr. Wolfe stated that the shot to the face was an immediate incapacitating shot and that the complainant's heart would continue to pump for at least a minute after the first shot to the face. The only logical conclusion from the forensic evidence was that Jorge Pena was shot where his body was discovered.

Thus, the habeas court found that based on the State's stipulation of evidence at the habeas hearing and the evidence presented at the habeas hearing that the trial testimony of Marcos Torres was entirely untrue. The State's entire theory of trial is unsupported by competent forensic evidence and that the State misrepresented the

13

testimony of the Dr. Shrode in its final arguments in support of use of the incredible testimony of Marcos Torres.

Clearly existing precedent requires that rehearing be granted and a new trial ordered. Justice demands no less. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Mooney v. Holohan*, 294 U.S. 103, 112-11 (1935); *Ex parte Ghahremani*, 332 S.W. 3d 470, 478 (Tex. Crim. App. 2011); and *Estrada v. State*, 313 S.W. 3d 274, 278-88 (Tex. Crim. App. 2010).

## PRAYER

Wherefore premises considered Applicant prays that this Court grant rehearing and uphold the findings of the State habeas court.

SCHNEIDER & McKINNEY, P.C.

/s/ Stanley G. Schneider
STANLEY G. SCHNEIDER
TBN: 17790500
440 Louisiana
Suite 800
Houston, Texas 77002
OFFICE: 713-951-9994
FAX: 713-224-6008
E-MAIL: stans3112@aol.com

ATTORNEY FOR APPLICANT

14

## CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4(i)(3), I certify that the above document contains 3,548 words, excluding the portions excluded in TEX. R. APP. P. 9.4(i)(1).

/s/ Stanley G. Schneider
STANLEY G. SCHNEIDER

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the attached and foregoing Applicant's Motion for Rehearing has been mailed, hand-delivered, or e-mailed to the office of the Harris County District Attorney's Office, 1201 Franklin; Houston, Texas 77002 and the Office of State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, on this the 2nd day of July, 2015.

/s/ Stanley G. Schneider
STANLEY G. SCHNEIDER