HAMILTON, Circuit Judge, joined by ROVNER and WILLIAMS, Circuit Judges, dissenting. The bar for federal habeas relief is high, requiring the petitioner to show the state courts unreasonably applied controlling Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Petitioner Long has cleared that high bar. I respectfully dissent. Nearly sixty years ago, the Supreme Court held that a State deprives a person of liberty without due process of law if it convicts him by knowingly using false testimony, and it imposed on the prosecutor the duty to see that perjured testimony is corrected. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). In this case, a key prosecution witness lied about a point critical'to her credibility. She swore to the jury, repeatedly, that she had been consistent in identifying petitioner Long as the person who murdered Sherman. Those were lies, and the prosecutors knew they were lies. Yet the prosecutors did nothing to see that the lies were corrected. The state courts actually recognized the due process violation but erred, as our panel explained, by excusing the violation as harmless. The majority affirms the results in the state court by first rejecting the state courts’ actual reasoning and then hypothesizing possible distinctions that might be drawn between this case and the Napue line of cases. Yet Napue itself considered and rejected the grounds the majority relies upon to excuse the Illinois courts’ failure to follow it. It does not matter, the Supreme Court said, which side elicited the false testimony. Id. at 269, 79 S.Ct. 1173. Nor does it matter whether the defense knew of the false testimony or whether the jury heard evidence contradicting the false testimony. See id. at 269-70, 79 S.Ct. 1173. What this jury never heard was a prosecutor or judge saying that the witness had lied to the jury. Moreover, the case against Long was so fragile that the Napue violation cannot reasonably be deemed harmless. The state courts’ denial of post-conviction relief to Long was contrary to Napue, so federal habeas relief is necessary under 28 U.S.C. § 2254. Part I of this dissent lays out the facts of the witness’s perjury during Long’s trial. Part II summarizes the' Supreme Court’s decision in Napue. Part III rejects the majority’s efforts to limit Napue to excuse the state courts’ failure to follow it. I. The Perjury in Long’s Trial We review here the conviction of Paysun Long for the murder of Sherman in Long’s second trial. (The second trial was needed because of prosecutorial misconduct in closing argument in the first trial.) No physical evidence tied Long to the murder. The prosecution relied heavily on two witnesses—Keyonna Edwards and Brooklyn Irby—who testified that they had seen Long shoot Sherman. Edwards had her own credibility issues, since some details of her account were not corroborated by anyone else present, but our focus here is on Irby.[1] Irby testified that she was walking through the Taft Homes housing development in Peoria on June 11, 2001 when she saw Long shoot Sherman. On cross-examination, defense counsel asked Irby whether she had previously told the prosecutor herself and an investigator that she had lied when she first told investigators in June 2001 that she had seen Long shoot Sherman. Supp. App. 132-36. Irby repeatedly denied that she had done so. Those sworn answers were lies, and the prosecutor knew it. Yet the prosecutor did nothing to correct Irby’s false denials of having changed her story, even in redirect examination of Irby. Long’s attorney did what he could to attack Irby’s lies and thus her credibility. After the State had finished presenting its case, the defense called Frank Walter, the prosecution’s' investigator who had talked with Irby. Walter testified that-Irby had recanted her identification of Long. App. Dkt. 13-12 at 330-34. That’s how the evidence closed: Irby said she had never changed her story, and Walter said she had. During closing arguments, the prosecution did not even acknowledge Irby’s lies, let alone correct them. The prosecution first tried to finesse the problem, saying that the defense counsel would argue that Brooklyn Irby came to the State’s Attorney’s Office and said on an earlier occasion prior to her testifying and said I wasn’t telling the police the truth. Well, she came in here and raised her hand and told you what happened and you saw her testimony. Maybe she thought if she told the State’s Attorney’s Office she wasn’t telling the truth she wouldn’t have to testify. But when she came in here and was under oath, she told you what she saw and that was consistent with what Keyonna [Edwards] told you and that was consistent with what she has told you and that was consistent with what Shawanda [Walker] told you and that was consistent with the physical evidence. Supp. App. 149-50 (emphases added). Missing from that careful dance around Irby’s perjury is any acknowledgment that Irby had lied under oath to the jury. The prosecutors’ handling of Irby contrasts with their sharp attacks on other witnesses, including prosecution witnesses, for being untruthful. See App. Dkt. 13-12 at 349-51. The prosecutors knew how to tell the jury that other witnesses had lied to them, but they never admitted to the jury that Irby had lied to the jury. During the defense closing argument, the defense pointed out Irby’s lies and reminded the jury that Walter, the prosecution’s investigator, had testified that Irby had changed her story: she had told him and the prosecutor that she had lied in June 2001 about seeing Long shoot Sherman. Yet in her trial testimony she lied by denying that. During the rebuttal argument, the prosecutor soft-pedaled the perjury. She said that Irby had recanted her story back in November 2001 when she was served with a subpoena, but immediately emphasized that Irby had (supposedly) told the truth when she was under oath. Supp. App. 171. The prosecutor still never acknowledged that Irby had lied to the jury in her trial testimony. To sum up, then, a key prosecution witness lied about a point critical to her credibility, and the prosecution knew she was lying. Yet the prosecution took no steps to correct the perjury. II. Napue v. Illinois Under .the Antiterrorism and Effective Death Penalty Act of 1996, known as AEDPA, federal courts must accept a state court’s decision on the merits of a habeas petitioner’s claim unless the state court decision was contrary to or an unreasonable application of clearly established law under Supreme Court authority, or based on an unreasonable finding of fact. 28 U.S.C. § 2254(d). Petitioner Long is not asking the federal courts to make new law on his behalf. He asks us only to enforce the Supreme Court’s 1959 decision in Napue v. Illinois. Napue was, like this case, a murder prosecution in Illinois. A police officer had been fatally shot in a robbery attempted by several men. The principal State’s witness was a man named Hamer who was already serving a prison sentence for the same murder. Hamer testified that Napue had been one of the robbers. During Na-pue’s trial, the prosecutor asked Hamer whether he had received any promises of leniency in return for his testimony. Ham-er said no. But that was false, and the prosecutor did nothing to correct that lie. The jury was told, however, that a public defender had promised “to do what he could” for Hamer. The prosecution later asked to have Hamer’s sentence reduced based on the promise that Hamer had denied receiving in Napue’s trial. When Napue heard of the effort to reduce Hamer’s sentence, he sought relief from his own conviction. The state courts denied relief, but the Supreme Court reversed in a unanimous opinion by Chief Justice Warren. The Court began from the foundation that “a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.” 360 U.S. at 269, 79 S.Ct. 1173, citing Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and other cases. The next sentence in the opinion addresses the problem here: “The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” Id. (emphasis added), citing Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), and other cases. (The Court later explained that this holding in Napue was a deliberate extension of the older ruling in Mooney. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).) Napue then rejected other attempts to excuse the use of the false testimony. First, it made no difference that the false testimony addressed Hamer’s credibility rather than his substantive testimony. 360 U.S. at 269, 79 S.Ct. 1173. “A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth.” Id. at 269-70, 79 S.Ct. 1173, quoting People v. Savvides, 1 N.Y.2d 554, 154 N.Y.S.2d 885, 136 N.E.2d 853, 854 (1956). Then the Court rejected another theory for avoiding the perjury, that merely contradictory evidence would correct the problem: “we do not believe that the fact that the jury was apprised of other grounds for believing that the witness Hamer may have had an interest in testifying against petitioner [Napue] turned what was otherwise a tainted trial into a fair one.” Id. at 270, 79 S.Ct. 1173. The Court finally rejected the state court’s conclusion that the false testimony would not have affected the verdict, id. at 271-72, 79 S.Ct. 1173, since the conviction of Napue depended so heavily on whether the jury believed Hamer. See also Wearry v. Cain, 577 U.S. -, -, 136 S.Ct. 1002, 1006, 194 L.Ed.2d 78 (2016) (noting that Napue harmless error standard also applies to Brady claims). III. The Majority’s Ejforts to Limit Napue Since 1959, Napue has been understood to impose on prosecutors an obligation to correct prosecution evidence that they know is false. In this case, the prosecution failed to fulfill that obligation. The state appellate court actually acknowledged the Napue violation, but refused, over a powerful dissent, to correct the error on the theory that the violation was harmless. People v. Long, 2011 WL 10457885, at *3, *4 (Ill. App. Jan. 21, 2011) (citing state cases that applied Napue)[2] The majority does not try to excuse the Napue due process violation as harmless, as the state court did. Instead, the majority offers four supposed distinctions that might allow some other hypothetical state court to deny relief to Long and thus to avoid federal habeas relief in light of 28 U.S.C. § 2254(d)(1). On examination, however, it becomes clear that Napue rejected the most important of them. The last distinction evaporates when we ask what it means to present “the truth” in an adversarial trial and what counts as “correcting” perjury under Napue. The majority first asks whether “Napue and its successors apply when the defense rather than the prosecutor elicits the false testimony?” Ante at 548. Napue itself answered that question: “The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” 360 U.S. at 269, 79 S.Ct. 1173. Nothing in the Napue opinion suggests that the prosecution’s constitutional duty of candor depends on which lawyer asked the question that drew the lie. See Brady, 373 U.S. at 87, 83 S.Ct. 1194 (noting that this holding in Napue extended prior rule in Mooney that prohibited prosecutors from offering knowingly perjured testimony). The majority tries to explain away the broad phrasing of the Napue opinion by pointing to the citation to Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), and reads the teaching of Napue on this point as if it were confined to the facts of AboHa. The better course is to assume' that the Supreme Court noticed whether it was phrasing its teaching in Napue broadly or narrowly. We-should not strain so hard to narrow it. In fact, the Supreme Court has already confronted a case in which the prosecution violated Nápue without itself offering the perjured testimony. In Giglio v. United States, 405 U.S. 150, 151-52, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), a key prosecution witness lied on cross-examination by denying he had received any promise of leniency. The prosecution did nothing to correct the lie because the trial prosecutor did not know of the promise. The Supreme Court reversed and remanded for a trial because of the perjury brought out by defendant’s cross-examination. The majority next asks, “Must the prosecutor correct false testimony when defense counsel already knows the truth?” Ante at 549. This is a red herring , that simply misses the point of Napue. The majority bases this supposed distinction on the theory that the Napue rule is a “cousin to the Brady doctrine.” Ante at 549, citing Brady, 373 U.S. 83, 83 S.Ct. 1194. Brady requires the prosecution to disclose to the defense evidence that tends to exculpate the accused, including evidence relevant to witness credibility. The doctrines. are in fact linked. In Giglio, the Supreme Court explained that Mooney had held that deliberately deceiving a court and jury by presenting evidence known to be false is incompatible with “rudimentary demands of justice,” and that Napue had extended that rule to cases where “the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” 405 U.S. at 153, 92 S.Ct. 763, quoting Napue, 360 U.S. at 269, 79 S.Ct. 1173. While the doctrines are linked, they are not identical., Giglio held that Brady applies even where the government’s failure to disclose exculpatory evidence was inadvertent, id. at 154, 92 S.Ct. 763, and disclosure to the defense is sufficient to comply with Brady. E.g., United States v. Walter, 870 F.3d 622, 629 (7th Cir. 2017); Holland v. City of Chicago, 643 F.3d 248, 255 (7th Cir. 2011). That’s why Brady does not apply to information already known to the defense. United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Walter, 870 F.3d at 629 But when the prosecution knows that a prosecution witness has lied to the court and jury, which everyone agrees happened' in this case, Napue applies. It imposes a duty on the prosecution not merely to inform the defense but to ensure that the perjury is corrected. 360 U.S. at 269, 79 S.Ct. 1173. If mere disclosure of the perjury to the defense were enough, as it is under Brady and as the majority suggests here, the logic of the rule would allow the prosecution to disclose the perjury and just stand aside while the defense tries to rebut it. That is simply not a reasonable reading of Napue, which again instructs that the prosecution may not allow the perjury “to go uncorrected when it appears.” 360 U.S. at 269, 79 S.Ct. 1173. In fact, the majority cites no case that actually interprets Na-pue as it suggests, allowing the prosecution merely to disclose the perjury to the defense without actually correcting .the perjury. . Napue addresses not what the defense knows but the integrity of the evidence before the jury. Napue teaches that the prosecution has an obligation to ensure that false testimony is corrected. Nothing in the opinion suggests that the obligation is removed if the defense knows the truth and has the opportunity to offer contradictory evidence. What matters is the risk that the jury will use the false evidence to convict. The Napue Court put the obligation squarely on the prosecution to see that the false evidencé is corrected, without the majority’s proposed qualification. The majority next asks: “Does the Constitution forbid a conviction obtained when the prosecutor does not correct but also does not rely on the falsehood?” Ante at 549. Again, the Napue opinion answers this question: “The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.” 360 U.S. at 269, 79 S.Ct. 1173. The key phrase is “allows it.to go uncorrected.” That flatly contradicts the majority’s suggestion that Napue left the prosecution room to avoid its obligation to correct false evidence by merely refraining from asking the jury specifically to rely upon the perjured testimony. Finally, the majority asks: “Does the Constitution forbid a conviction obtained when all material-evidence is presented to the jury before it deliberates?” Ante at 649. That proposed distinction might have a superficial plausibility, but it is . also plainly contrary- to Napue. It also ignores the reality of a jury trial in- our adversarial system. Under the majority’s theory, Na-pue might allow prosecutors to respond to known perjury by merely allowing the defense to contradict the perjury. It does not. Napue made clear that the prosecution has a duty to correct the perjury. A jury that hears evidence merely contradicting the perjury cannot be said to know the truth. Nor can mere contradiction reasonably be deemed to be a “correction.” The prosecution here never admitted to the jury that Irby lied to them. The jurors heard Irby repeatedly claim under oath that she had told a consistent story, and they heard investigator Walter testify that she had not been consistent. The judge instructed the jurors that it was up to them to evaluate the credibility of the witnesses and that the lawyers’ arguments were just argument, not evidence. ' In the post-conviction proceedings, and with the benefit-of hindsight, the lawyers and judges know that Irby lied to the jury. That fact is “as clear and certain as a piece of crystal or- a small diamond.” See Nix v. Whiteside, 475 U.S. 157, 190, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (Stevens, J., concurring). But the jurors just heard conflicting testimony from Irby and Walter. The prosecution even told them in closing argument that a witness’s prior inconsistent statements should not affect her credibility! To the jury, whether Irby had lied to them was not a certain fact but only a possibility. It was one of those “mixtures of sand and clay” more familiar to trial lawyers and judges. See id. As Justice McDade explained in her dissent in the Illinois Appellate Court, due process and Napue are violated if the prosecutor can leave “jurors, to somehow discern what he had the legal obligation to tell them—that Irby had. lied under oath.” Long, 2011 WL 10457885, at *8 (McDade,- J., dissenting) (emphasis in original). The Supreme Court made the same point more recently. The Court explained that due process of law usually relies on the presentation of contradictory evidence, but noted the exception for perjury by prosecution witnesses, where due process calls for much stronger medicine. Perry v. New Hampshire, 565 U.S. 228, 237, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012). In short, the majority’s suggestions that Napue leaves the state courts room to avoid following it on the facts of this case are without support. Napue expressly rejected several of the suggestions, and its logic clearly rejects the last. IV. Remaining Issues The panel explained why Long’s due process claim under Napue was not procedurally defaulted. 809 F.3d at 308-09. And the Napue due process violation cannot reasonably be dismissed as harmless or non-prejudicial under any available standard, whether under Napue itself, 360 U.S. at 272, 79 S.Ct. 1173 (false testimony “may have had an effect on the outcome of the trial”), Brecht v. Abrahamson, 507 U.S. 619, 622, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (whether error “had substantial and injurious effect or influence”), or Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (“harmless beyond a reasonable doubt”). The Illinois Appellate Court acknowledged in three different appeals, and this court’s panel explained, that the case against Long was weak. See Long, 2011 WL 10457885, at *3 (“not overwhelming”); Supp. App. 63 (affirming second verdict: evidence in second trial was “closely balanced”); Supp. App. 49 (reversing original verdict: evidence in first trial was “closely balanced”); Long, 809 F.3d at 311 (noting that case against Long was “weak”). No physical evidence tied Long to the murder. All four of the State’s eyewitnesses posed problems. Two testified that they did not see Long shoot Sherman. Edwards had her own credibility problems. And Irby lied to the jury. The State’s failure to correct Irby’s perjury likely influenced the jury. It was not reasonable of the state court to find that merely offering contradictory evidence (from investigator Walter) was sufficient to cure the Napue due process violation. See Long, 809 F.3d at 311. In evaluating and rejecting the possibility of harmless error, we consider the trial record as a whole. Napue, 360 U.S. at 272, 79 S.Ct. 1173; see also Giglio, 405 U.S. at 154, 92 S.Ct. 763 (reversing where perjured testimony was key to prosecution’s case); Long, 809 F.3d at 311. We should not close our eyes to other instances of prosecutorial overreach, including two outrages from the rebuttal closing argument, when the defense could not respond. First, the prosecution pulled a blatantly racist stunt, comparing those present when the police arrived to the slave characters in Gone with the Wind, quoting from the scene where Scarlett O’Hara tells the slave Prissy to help her deliver Melanie Wilkes’s baby. Prissy famously tells “Miss Scarlett” that she “don’t know nothin’ ’bout birthin’ babies,” and is promptly slapped. See Supp. App. 168; see also Supp. App. 70-71 (McDade, J., dissenting from affirmance on direct appeal) (prosecutor’s use of Gone with the Wind passage was “blatant appeal to racism” that worked). And a few moments later, the prosecutor went so far as to describe a letter Irby had written that was not even in evidence. The judge had to interrupt and told the jury to disregard that blatant attempt by the experienced lead prosecutor to put unadmitted hearsay in front of the jury, Supp. App. 171, but she got the jury’s attention. During deliberations, the jury asked to see that letter. In short, Long was not convicted in a fair trial. We should order that he receive a new trial. . Two other prosecution witnesses testified that Long was not the shooter, but the prose- , cution was allowed to put into evidence earlier recorded statements' by those witnesses saying that he was. . The majority cites Harrington v. Richter and Johnson v. Williams, ante at 547-48, for the idea that AEDPA deference under § 2254(d)(1) applies "whenever the state court makes a decision on the merits, no matter what the state judiciary says.” Both cases dealt with summary, unexplained orders issued by busy state courts. In such cases, considering possible explanations for a state court's unexplained denial of a federal constitutional claim helps preserve comity between federal state courts. Here, however, the Illinois court actually acknowledged the constitutional problem. It found a due process violation but concluded that the violation did not matter. In a case such as this, "where the state court’s real reasons can be ascertained,” we should look to the "actual arguments or theories that supported the state court’s decision” and not to secondary or hypothetical rationales. Hittson v. Chatman, 576 U.S. -, -, 135 S.Ct. 2126, 2127-28, 192 L.Ed.2d 887 (2015) (Ginsburg, J. concurring in denial of certiorari) (internal quotations and ellipses omitted).